GEOFFREY M. SMYTH & others[1] *vs.* MARSHALL FIELD, FIFTH,
& others.[2]

No. 94-P-1135.

Suffolk. September 6, 1995. - July 1, 1996.

Present: SMITH, GILLERMAN, & FLANNERY, JJ.

*Partnership,* Limited partnership, Derivative action, Registration, Foreign
limited partnership. *Practice, Civil,* Costs, Discovery.

Where a foreign limited partnership had failed to register to do business as
   required by G. L. c. 109, § 49, it was barred by the provisions of G. L.
   c. 109, § 55 (a), from bringing any action in Massachusetts and likewise
   no derivative action could be maintained on its behalf by the limited
   partners. [628-630]
A Superior Court judge correctly declined to order a former general partner
   of a Delaware limited partnership that no longer was in existence to
   cure the partnership's lack of registration to do business in Mas-
   sachusetts, where Delaware was the proper forum in which to address
   the issue of the existence of the partnership. [630-631]
Where a Delaware limited partnership terminated its existence by executing
   a cancellation of certificate of limited partnership and filing it with the
   Delaware Secretary of State, the former limited partners lacked standing
   under G. L. c. 109, § 57, to bring a derivative action on behalf of the
   partnership. [631]
In a civil action the judge did not abuse his discretion in awarding to the
   prevailing party its costs for depositions, document production, and
   summary judgment. [631]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 21, 1991.

The case was heard by *Charles F. Barrett,* J., on a motion
for summary judgment.

*David J. Fine* for the plaintiffs.

*Merriann M. Panarella* for Marshall Field, Fifth, & others.

---

[1] Burton J. Power and Christopher C. Yule.

[2] CC&F Investors, Inc., CC&F Commercial, Inc., MGH Health Services
Corporation, and Brim of Massachusetts, Inc.

*John C. Bartenstein* for MGH Health Services Corporation & another.

SMITH, J. The plaintiffs, Geoffrey M. Smyth, Burton J. Power, and Christopher C. Yule, brought a four-count complaint against Marshall Field, Fifth, CC&F Investors, Inc. (CC&F Investors), CC&F Commercial, Inc. (CC&F Commercial)(hereinafter collectively the CC&F defendants), MGH Health Services Corporation (MGH), and Brim of Massachusetts, Inc. (Brim). Count I alleged breach of fiduciary duties; Count II alleged breach of contract; Count III alleged violation of a constructive trust and sought an accounting; and Count IV alleged violation of G. L. c. 93A. According to the plaintiffs' complaint, the action was brought pursuant to the derivative rights granted plaintiffs as limited partners in the CC&F Fox Hill Associates Limited Partnership (CC&F Associates), a Delaware limited partnership.

After responding to the complaint against them, the defendants moved for summary judgment. After a hearing, a Superior Court judge granted summary judgment in favor of all the defendants. The plaintiffs have appealed from the judge's action.

The material facts are not in dispute. In April, 1987, the Fox Hill Village Partnership (Partnership), a Massachusetts general partnership, was formed by three equal partners: MGH; Brim, a wholly-owned subsidiary of Hillhaven Corporation, which operates many nursing facilities and retirement communities nationwide; and CC&F Fox Hill Village Investment Company (CC&F F.H.V. Investment), a Massachusetts general partnership created by Cabot, Cabot & Forbes (CC&F). The purpose of the Partnership was to develop and manage Fox Hill Village, a nursing home consisting of seventy beds and a retirement community of approximately 357 units in Westwood. The over-all management and control of the business and affairs of the Partnership was vested in an executive committee consisting of one representative of each of the partners.

CC&F F.H.V. Investment was composed of two partners: CC&F East Limited Partnership (CC&F East), which was the managing general partner and held an eighty-four percent

interest in CC&F F.H.V. Investment,[3] and the aforementioned CC&F Associates, which owned a sixteen percent partnership interest in CC&F F.H.V. Investment.[4] Although CC&F Commercial, the general partner of CC&F Associates, filed a certificate of limited partnership with the Secretary of State of the State of Delaware, it never registered CC&F Associates as a foreign limited partnership in Massachusetts as required by G. L. c. 109, § 49.[5]

The plaintiffs were employees of CC&F and were involved with the development, financing, and construction of Fox Hill Village. Because of their involvement in the project, CC&F made them limited partners in CC&F Associates as part of their compensation. Smyth and Yule each owned a 25.78 percent partnership interest; Power owned a 10.94 percent partnership interest.[6] As limited partners, they were entitled to share in any profits, but not the losses, realized by CC&F F.H.V. Investment. Those losses flowed to CC&F Associates.

Under the Fox Hill Village Partnership agreement, each partner in that project was required to make an initial capital contribution to the Partnership. The agreement also provided that during the construction phase of the project (the relevant stage to this appeal) additional capital contributions could be assessed to the partners. If a partner failed to meet the call for additional capital during the construction phase, the agreement stated that the partners who did meet the call could ei-

---

[3]CC&F Investors, a Delaware corporation, was the general partner for CC&F East, and Field was a director, the president, and sole stockholder of CC&F Investors.

[4]CC&F Commercial, a Massachusetts corporation, was the general partner for CC&F Associates. Field was a director, the president and sole stockholder of CC&F Commercial.

[5]General Laws c. 109, § 49, states in relevant part:

"Every foreign limited partnership doing business in the [C]ommonwealth shall submit to the secretary of state, within ten days after it commences doing business in the [C]ommonwealth, an application for registration as a foreign limited partnership. . . ."

[6]In his memorandum, the judge below transposed the ownership interests and stated that Power and Smyth each owned a 25.8 percent partnership interest, and Yule owned a 10.94 percent interest. The parties' briefs and the materials in the record appendix make clear that the ownership interests were instead held as we have set forth above.

ther (1) require the nonfunding partner to sell its percentage interest to them "at an aggregate price equal to one-third of the [nonfunding partner's] then existing [c]apital [a]ccount," or (2) make a loan to the nonfunding partner.

On June 22, 1990, a $1.2 million capital call was made. At the same time, CC&F, which had created CC&F F.H.V. Investment, was in severe financial distress because of the downturn in the real estate market that had occurred nationwide. After studying its dwindling financial resources, CC&F decided not to invest further, through CC&F F.H.V. Investment, in the Fox Hill Village project. MGH and Brim each decided to exercise their option under the Partnership agreement and purchased CC&F F.H.V. Investment's partnership share in the Fox Hill Village project. None of the money received in the buy-out was available for distribution to CC&F F.H.V. Investment partners because the outstanding liabilities of CC&F F.H.V. Investment exceeded that amount. Therefore, no cash distributions from the sale were made to any of the partners in CC&F Associates, including the plaintiffs.

In December, 1990, with its interest in the Partnership sold, and its affairs fully and finally wound up in accordance with the terms of the limited partnership agreement, CC&F Associates, through its general partner, executed a certificate of cancellation of certificate of limited partnership, which was filed with the Delaware Secretary of State on July 2, 1991.

Because they brought their complaint as a derivative action on behalf of CC&F Associates, the plaintiffs claimed that as a result of having partnership interests in CC&F Associates' limited partnership, they had an ownership interest in the Fox Hill Village project. The plaintiffs further claimed that the defendants violated their fiduciary and contractual obligations by not notifying them of the June, 1990, capital call, by failing to meet the call, and by not providing the plaintiffs with the opportunity to make the required contribution if CC&F F.H.V. Investment decided, as it did, not to do so. The plaintiffs sought, in their complaint, an order that their claimed "ownership interest" in the Fox Hill Village project be restored or, in the alternative, that damages be assessed against all the defendants.

In granting summary judgment in favor of all of the defendants, the motion judge ruled that because the plaintiffs

had brought a derivative action, they had standing to pursue their claims only if CC&F Associates could have brought such claims. The motion judge then ruled that because CC&F Associates, a foreign limited partnership, had failed to register to do business in Massachusetts as required by G. L. c. 109,§ 49, it was barred by the provisions of G. L. c. 109, § 55(a), from bringing any action in Massachusetts. Because CC&F Associates was barred from maintaining any action in Massachusetts, the judge reasoned, the plaintiffs were also barred from maintaining any action in Massachusetts on CC&F Associates' behalf.[7]

We agree with the motion judge. A limited partner may bring a derivative action for the benefit of the limited partnership. G. L. c. 109, § 56; Del. Code Ann. tit. 6, § 17-1001 (1993). Because the claim asserted in a derivative action is that which rightfully belongs to the limited partnership, see Southworth & Glazer, Massachusetts Corporation Law and Practice § 15.4 (1995), the right to maintain a derivative action can be no greater than, or different from, the right of the limited partnership to maintain the action for which relief is now sought derivatively. We consider, therefore, whether this derivative action may be maintained when CC&F Associates, a foreign limited partnership, would have been barred from maintaining this action because of its failure to register as a foreign limited partnership in Massachusetts.

Recovery must be for the benefit of the limited partnership, see G. L. c. 109, § 59. Because G. L. c. 109, § 55(a), as appearing in St. 1982, c. 202, § 1, states, in relevant part, that "no action shall be maintained or recovery had by the foreign limited partnership in any of the courts of the commonwealth as long as such failure [to register] continues," to permit the plaintiffs to maintain this action would defeat the legislative mandate that a foreign limited partnership may not apply for

---

[7]The plaintiffs claim that the defendants waived their right to raise the defense of nonregistration because that defense was not included as an affirmative defense in the defendants' answers to the plaintiffs' complaint. The nonregistration issue was raised with specificity in the summary judgment proceedings. See Shea v. Bay State Gas Co., 383 Mass. 218, 219-220 n.3 (1981), quoting from Suckow Borax Mines Consol. v. Borax Consol., 185 F.2d 196, 205 (9th Cir. 1950), cert. denied, 340 U.S. 443 (1951) ("affirmative defenses . . . may be established upon motion . . . for summary judgment when . . . a set of undisputed facts is revealed upon which the moving party is entitled to judgment as a matter of law").

relief in Massachusetts without proper and timely registration.

The statute clearly contemplates that a foreign limited partnership that is no longer doing business in Massachusetts must cure its failure, including a past failure to register, in order to remove the bar against maintaining an action. See *E. & G. Theater Co.* v. *Greene*, 216 Mass. 171, 173 (1913)(plaintiff foreign corporation "was not entitled to maintain its suit unless and until it should have complied with the law").

The plaintiffs contend that *National Fertilizer Co.* v. *Fall River Five Cents Sav. Bank*, 196 Mass. 458, 460-461 (1907), supports their argument that G. L. c. 181, § 9, and G. L. c. 109, § 55(*a*), were not intended by the Legislature to bar permanently foreign corporations and limited partnerships that fail to register with the Secretary of State from maintaining actions in Massachusetts. We agree that a failure to register presents a bar that *may* be cured. But here, the plaintiffs, despite having had knowledge of the nonregistration bar for several years, have taken no action in the Delaware courts to revive the existence of CC&F Associates, a prerequisite to registering it as a foreign limited partnership in Massachusetts.

The plaintiffs also argue that because CC&F Associates' only activity at the time that the plaintiffs brought their action was to serve as a nominal defendant in that action, it was not required to register to do business in Massachusetts. See G. L. c. 181, § 3, as appearing in St. 1973, c. 844, § 1 (foreign corporation not considered to be doing business in the Commonwealth if its activities consist of no more than "participating or appearing in any action or suit . . ."). The plaintiffs' argument ignores that the legal existence of CC&F Associates was terminated upon the filing of its certificate of cancellation in July, 1991, some four months before the plaintiffs commenced this action. We note that under Delaware law (see Del. Code Ann., tit. 6, § 17-201[b] [1993]) the filing of a certificate of cancellation of a limited partnership terminates the limited partnership's existence. Thus, CC&F Associates was not in existence at the time the plaintiffs brought this action.

The plaintiffs contend that the motion judge should have ordered CC&F Commercial, the former general partner of CC&F Associates, to cure the lack of registration. That argument fails because CC&F Associates has ceased to exist as a

legal entity and any action to revive it — an absolute prerequisite to registering it in Massachusetts — should be brought in Delaware. See *Gunter* v. *Arlington Mills,* 271 Mass. 314, 316 (1930) ("Ordinarily our courts decline to take jurisdiction where performance of a positive act is to be carried out in another State"). Therefore, the motion judge properly declined to enter an order compelling CC&F Commercial to register CC&F Associates in Massachusetts until the plaintiffs first addressed the question of CC&F Associates' termination in the proper forum — the Delaware courts.[8]

Finally, and most significantly, G. L. c. 109, § 57, as appearing in St. 1982, c. 202, § 1, states in relevant part: "In a derivative action, the *plaintiff must be a partner at the time of bringing the action . . .*" (emphasis added). Because CC&F Associates no longer existed, the plaintiffs were not limited partners of CC&F Associates at the time the action commenced. For this reason also the plaintiffs lacked standing to bring this action and will continue to lack standing unless and until the partnership is revived in Delaware.

The CC&F defendants sought recovery of $7,400 in deposition, document production, and summary judgment costs. Similarly, MGH and Brim sought recovery of $8,341 in costs. See Mass.R.Civ.P. 54(e), as amended, 382 Mass. 829 (1981). The motion judge held a hearing on the matter that covered two days. After the hearing, the judge made a finding that the depositions were reasonably necessary as required by the rule. The plaintiffs did not challenge the accuracy of the affidavits and vouchers submitted with the motion. Further, the motion judge determined that there were no disputed issues of material fact. Therefore, the requirements set forth in *Waldman* v. *American Honda Motor Co., Inc.,* 413 Mass. 320, 326-328 (1992), were met. The motion judge did not abuse his discretion in awarding the costs requested.

*Judgment affirmed.*

---

[8]The plaintiffs have always had the option of commencing an action in Delaware, challenging the termination of CC&F Associates. Thus, summary judgment in favor of the defendants did not deprive the plaintiffs of a forum or a remedy.