van Gestel, Allan, J.
This matter is before the Court on the Defendants’ Motion for Partial Summary Judgment on Plaintiffs Claims and Summary Judgment on Defendants’ Counterclaim, Paper #46. What is involved are Counts I-VII and XI of the Amended Complaint, and the defendants’ Counterclaim.

BACKGROUND

The plaintiff, First Taunton Financial Corp. (“First Taunton”), entered into an agreement to purchase real property at 8-9 Arlington Street, Boston (the “Premises”). First Taunton, however, needed additional funds to acquire the Premises. In this effort, First Taunton reached a deal with the defendant Arlington Land Acquisition-99, LLC (“ALA”).
First Taunton and ALA formed a new entity, the defendant Eight Arlington Street, LLC (the “LLC”), to purchase and redevelop the Premises into six “upscale” condominium units (the “Project”). They also negotiated the Operating Agreement of the LLC (the “Operating Agreement”). First Taunton and ALA were the sole members of the LLC.
The defendant Sean P. McGrath (“McGrath”) was at all times the Manager of ALA. He was to make[1] or facilitate an initial $1.8 million contribution to the Project, and thereafter the McGrath family would fund the entire Project — nearly $20 million — through a private loan and advances. Under the Operating Agreement, the initial contribution was to be interest free for the first 18 months of the Project.
McGrath, through ALA, was to manage the Project and he had broad power and discretion in discharging his duties. In the Operating Agreement, McGrath obtained the right to indemnify all “Managers” and their “Affiliates,” including McGrath family members who provided most of the financing for the Project, for expenses incurred in defending any claims concerning the Project.
*557 Also, according to the Operating Agreement, the Managers and Affiliates of the LLC were relieved from liability unless their actions constituted gross negligence or willful misconduct.
First Taunton was to contribute only $200,000 of its own funds to the Project. For that reason, it had a limited, advisory role in the development.
The Project was under development for about five years, from December 1999, the date of acquisition of the Premises, to February 2004, the expiration of the warranty on the last condominium unit sold.
In the Operating Agreement, the parties specifically agreed that neither of the two Members would petition the Court for a dissolution of the LLC.
The construction at the Premises was funded by an initial loan of $8,772,998.58 from a McGrath entity known as Back Bay Mortgage Trust (“BBMTj, also a named defendant. Supplemental advances thereafter also came from BBMT. BBMT is owned by Sean, JoAnn, Holly and David McGrath. It was formed shortly after the LLC Agreement was signed to fund the Project and other McGrath family investments. The McGraths funded the BBMT through their own equity accounts, capital accounts or by drawing on their credit lines, including the credit line of JoAnn McGrath at Boston Safe Deposit and Trust Company (“BSDTC”).
Under the Operating Agreement, the first 18 months of the loans from BBMTwere interest free; over the next 12 months, the rate was 10%; and thereafter, through the end of the Project, the rate was to be 14%. The terms of the funding from BSDTC to BBMT were less than what the LLC paid BBMT. This spread was said to be designed, among other things, to compensate BBMT for the 18 months that it loaned the Project funds interest free.
By December 2002, BBMT was, in accordance with the Operating Agreement, receiving an interest rate of 14% on the money it had loaned to the LLC.
At First Taunton’s behest, McGrath refinanced the LLC’s debt to BBMT at a much lower rate of interest. This refinancing came about as a result of First Taunton’s request to McGrath that he match the terms of a purported commitment to lend at 4% with 1.5 points supposedly obtained by First Taunton from a mortgage broker, and in the amount of $2.5 million expressly agreed to in writing by First Taunton.
As before, BBMT obtained slightly better financing of 3.75% with .5 points from BSDTC.
When BSDTC provided the proceeds of the December 2002 refinancing, as an accounting matter, the funds should have been transferred from BSDTC to BBMT and then from BBMT to JoAnn McGrath’s credit line. This was because she, through her securitized line of credit, was the sole outstanding financier at the time. The middle step, however, was skipped and the funds were wired directly from BSDTC’s loan department to JoAnn McGrath’s line of credit.
Upon learning that excess proceeds were in JoAnn McGrath’s account, McGrath arranged to pay back approximately $600,000, plus interest from JoAnn’s credit line to the LLC. McGrath was one of JoAnn McGrath’s sons. It was he who was involved in these transactions through his authority to use his mother’s credit line to fund the BBMT.
All of the condominium units at the Premises were sold over a span of 19 months, from July 2001 to February 2003, netting a profit of $3,222,623.
During the Project, each party — First Taunton and ALA — received a distribution of $1.4 million, leaving $422,623 to cover warranty issues and other continuing Project costs. Had this suit not been filed, a large portion of these latter finds would have been available for distribution to First Taunton and ALA in March 2004.
First Taunton filed this suit in September 2003. It alleges in essence that ALA and McGrath mismanaged the LLC and committed financial improprieties by causing the LLC to improperly: (1) pay a $25,000 fee to BBMT in connection with the December 2002 refinancing; (2) transfer the loan proceeds in connection with that refinancing into the credit line of JoAnn McGrath; (3) gave preferential treatment to the McGrath family members; (4) sold parking spaces at arbitrary prices; (5) paid excessive amounts to ALA and other McGrath controlled entities; (6) paid excessive amounts for marketing, management and legal services; (7) prepared a HUD Settlement Statement that did not accurately reflect the distribution of the sales or loan proceeds; (8) permitted accountants to issue inaccurate tax reporting forms; and (9) directed money or property to McGrath-controlled entities without consideration.
Along with monetary damages sought in Counts I-VII, in other counts First Taunton seeks an accounting from ALA, injunctive relief to stop further expenditures by the LLC, declaratory relief, dissolution of the LLC, and asks for the imposition of a constructive trust.
The complaint was amended to add a G.L.c. 93A claim against BBMT resulting from the December 2002 refinancing. In this claim, First Taunton alleges that McGrath as the trustee of BBMT charged “excessive interest” on loans to the LLC and improperly charged a fee of $25,000 in connection with the refinancing.

DISCUSSION

“Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party all material facts have been established and the moving party.is entitled to judgment as a matter of law.” M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Kesler v. Pritchard, 362 Mass. 132, 134 (1972); Mass.R.Civ.P. Rule 56(c).
In their motion here, the defendants raise a number of different issues in attacking various of the counts of the amended complaint. They charge that: many of *558 the counts should be dismissed because they present direct actions or claims when, in fact and law, the claims are really derivative in nature; the G.L.c. 93A claim is barred because the requisite business relationship does not exist; the Operating Agreement bars a claim for dissolution of the LLC; and there are no viable claims against JoAnn McGrath because there is no showing that she did anything and because under the Operating Agreement she is only liable for gross negligence or willful misconduct, which is not alleged. These various positions are sufficiently distinct that, for the most part, they require separate attention.

The derivative action contentions.

The defendants argue that each of Counts I-VII fails because First Taunton proceeded directly against the several defendants rather than derivatively on behalf of the LLC. This position brings into focus the question of whether Mass.RCiv.P. Rule 23.1, dealing with derivative actions, applies to a Massachusetts limited liability company of the nature presented by the LLC here.
Derivative actions are most frequently suits by shareholders of a corporation against corporate officers or directors to recover, on behalf of the corporation, for matters on which the officers and directors refuse to act or are themselves the malfeasors. An examination of Rule 23.1’s language, however, suggests a broader reach.
In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified by oath and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law from one who was a stockholder or member at such time...
(Emphasis added.)
Rule 23.1 clearly is not limited solely to traditional corporations. It has been applied to policyholders in a mutual insurance company, Harhen v. Brown, 431 Mass. 838 (2000), a general partner, on behalf of the partnership, against limited partners, Partnership Equities, Inc. v. Marten, 15 Mass.App.Ct. 42, 50-51 (1982), limited partners for the benefit of a partnership, Smyth v. Marshall Field, Fifth, 40 Mass.App.Ct. 625, 629 (1996), and unit owners in condominiums, Cigal v. Leader Development Corp., 408 Mass. 212, 218 n.10 (1990), and Sea Pines Condominium III Association v. Steffens, 61 Mass.App.Ct. 838 (2004).
This Court concludes that there is nothing in G.L.c. 156C, the statute permitting limited liability companies in Massachusetts, that prevents derivative actions by members thereof on behalf of the company. In fact, c. 156C, sec. 56 seems clearly to permit such actions in the absence of anything in the operating agreement providing otherwise. The very next section, sec. 57, begins with the words “on termination of the derivative suit, the court may: . ..” (Emphasis added.)
Nothing has been brought to this Court’s attention by First Taunton showing any language in the Operating Agreement in issue that speaks at all, one way or the other, about derivative actions. Certainly, nothing in the Operating Agreement “providing otherwise” has been shown.
Counts I-VII, despite First Taunton’s protests to the contrary, seek relief in different forms for monies paid out, allegedly improperly, by the LLC because of actions by ALA and McGrath, or members of the McGrath family. These, however, are claims to recover money the LLC expended, not claims for sums paid out or obtained from First Taunton. First Taunton should have proceeded derivatively on behalf of the LLC, not directly for itself. Consequently, Rule 23.1 applies, and it has not been complied with here.

The G.L.c. 93A claim.

This claim is in Count XI of the amended complaint. It runs against BBMT, charging unfair and deceptive acts in the course of its lending to the LLC. This, too, is a claim that should have been derivatively brought.
Also, the defendants argue that Count XI should fail because of the intra-enterprise exception to a c. 93A claim. This Court disagrees.
BBMT was formed to provide a vehicle for the McGrath family to fund the Project and other family ventures. Rather than for the family members to simply put their money directly into the Project — which would ordinarily be deemed capital financing — the McGrath family, with the aid of their attorney, created BBMT and used promissory notes and mortgage security to fund the Project. Their funding, thereby, became loans, not capital contributions.
This was not an accidental occurrence. It was an intentionally designed legal vehicle to do precisely what it accomplished.
BBMT, although controlled and funded by the Mc-Grath family, is not a part of the family, nor is it a member or manager of the LLC. BBMT is a separate entity, doing business and subject to G.L.c. 93A.
Whether facts ultimately can be established that will support the c. 93A claim is matter for trial, not summary judgment. Thus, Count XI will be dismissed because not brought derivatively, but it will not be dismissed because it is beyond the reach of c. 93A.

The claims against JoAnn McGrath

There are no substantive allegations in the amended complaint revealing that JoAnn McGrath did anything with regard to the Project. While much of the funding from BBMT may have come from her account at BSDTC, she is not shown to have played any role in how that funding occurred. Her son had, and exercised, power over her accounts in this matter.
*559 Further, even if the essentially negligible allegations against JoAnn McGrath might conceivably be considered enough to survive summary judgment in the ordinary circumstance, they do not do so here. The Operating Agreement has an exculpatory clause that relieves JoAnn McGrath from liability on all claims other than for matters of gross negligence or willful misconduct. There is nothing on the summary judgment record that comes anywhere near showing gross negligence or willful misconduct on Mrs. McGrath’s behalf. There are not even any allegations saying so. All claims against her must be dismissed.

The dissolution claim.

The defendants point to the clause in the Operating Agreement prohibiting any member from petitioning the Court for dissolution of the LLC. This, they say, warrants summary judgment on First Taunton’s count seeking dissolution of the LLC. Were the LLC still in operation and the condominium units still unsold, there might be some merit in that provision. That is not the situation however.
First Taunton relies upon another provision in the Operating Agreement that itself mandates the dissolution of the LLC after the sale of all, or substantially all, of its assets, at which time the LLC’s affairs would be wound up and the remaining proceeds distributed. First Taunton is not barred by the Operating Agreement from exercising its rights as a member under this provision.

The indemnity provisions.

The defendants argue in their counterclaim that McGrath has full rights under the Operating Agreement to indemnify managers and their affiliates for legal fees and costs. His position is well taken.
First Taunton responds, however, that there are factual disputes that need resolution as to whether any of the recipients of the indemnity “shall have been adjudicated in any proceeding not to have acted in good faith in the reasonable belief that his or her action was in the best interest of the LLC.” It is for this latter reason that the counterclaim must remain open for trial.

ORDER

For the foregoing reasons, the Defendants’ Motion for Partial Summary Judgment on Plaintiffs Claims and Summary Judgment on Defendants’ Counterclaim, Paper #46, is ALLOWED in full as to Counts I-VII, as to all claims against JoAnn McGrath, and only for the reasons relating to failure to comply with Rule 23.1 as to Count XI. The motion is otherwise DENIED.