Lemire, James R., J.
This action arises out a dispute between family members with interests in the same business entities. The plaintiff, Ernest S. Hayeck (“Ernest”), formed several partnerships with his late brother, George N. Hayeck (“George N.”), for the purpose of holding and managing an apartment complex in Worcester, Massachusetts. Both before and after George N.’s death, the defendants allegedly engaged in wrongful conduct regarding the business entities. In a complaint and supplemental complaint, Ernest asserts the following claims against the defendants: (1) fraud (Count I); (2) deceit (Count II); (3) self-dealing (Count III); (4) breach of fiduciary duty (Count IV); (5) negligence (Count V); (6) breach of fiduciary duly (Count VI); and (7) unjust enrichment (Count VII). The action is now before the court on the defendants’ motion to dismiss and motion to strike. For the following reasons, the motion to dismiss is ALLOWED in part and DENIED in part, and the court takes no action on the motion to strike.
BACKGROUND
The facts, taken from the complaint and the supplemental complaint and viewed in the light most favorable to him, are as follows.
I. The Complaint
On May 18, 1971, Ernest and George N. formed Fruit Sever Associates (“Fruit Associates”), a partnership. George N. was the general partner and both he and Ernest were the limited partners. The two brothers formed Fruit Associates to hold a multi-unit apartment building project in Worcester, Massachusetts (“Project”), which the United States Department of Housing and Urban Development (“HUD”) financed. At the same time that they formed Fruit Associates, Ernest and George N. formed Concord Management, also a partnership, which was to mange the Project and collect management fees pursuant to HUD regulations. Ernest and George N. agreed at the time of these entities’ formations that the Project’s management fees would be split evenly between them. Going forward, Ernest and George N. used the fees Concord Management collected to offset the personal tax liabilities they incurred for their investments in the Project.
In May of 1996, George N. learned that he was terminally ill with cancer. He was scheduled to travel with Ernest to Bethesda, Maryland on August 3, 1996 for cancer treatments. The night before, on August 2, 1996, one of George N.’s sons, defendant Paul G. Hayeck *635 (“Paul”), presented to Ernest legal documents that he (Paul) or one of his firm’s other attorneys drafted. The documents added defendant Fruit Sever Realty Corporation (“Fruit Corporation”) as a general partner to Fruit Associates. Fruit Corporation had been formed on August 1, 1996, and George N. was its sole officer and director. George N. and Paul represented to Ernest that the addition of Fruit Corporation was only temporary and intended to protect Fruit Associates by avoiding its dissolution should George N. die while in Maryland. Ernest agreed to sign the documents in return for a promise from George N. and Paul that a limited liability company would be formed to act as general partner. Partnership interests in Fruit Associates following the amendment were as follows: Fruit Corporation held a two percent interest as general partner, George N. held a three percent interest as general partner, Ernest held a fifty percent interest as limited partner, and George N. held a forty-five percent interest as limited partner.
George N. survived the trip to Maryland. In August 1996, he unilaterally terminated Concord Management and hired Fruit Corporation to manage the Project.[2] Fruit Corporation thereafter received all of the management fees on the Project. Ernest did not know of, nor did he give his authorization or consent to, the change in management companies.
In May of 1997, Ernest contacted George N. to discuss Fruit Associates and to demand the formation of a limited liability company, as George N. and Paul had promised would occur. George N. agreed to meet with Ernest, but the meeting never took place and the limited liability company was never formed. George N. died on July 4, 1997. Since his death, his widow, defendant Helen L. Hayeck (“Helen”), has received the management fees and other payments generated through Fruit Associates.
By letter dated December 14, 1997, defendant Albert G. Hayeck (“Albert”), another of George N.’s sons, informed the HUD that the individuals managing Fruit Associates were committing fraud in various ways. The letter stated that Ernest, a limited partner of Fruit Associates, did not know of the wrongdoing. According to the complaint, Albert was involved in managing Fruit Associates up until early December 1997. Ernest also alleges that George E. Hayeck (“George E.”) was involved in managing Fruit Associates, and that he knew of George N. and Paul’s scheme to add Fruit Corporation as a general partner to Fruit Associates and was in collusion with them.
Counts I-IV are based on these allegations.
II. The Supplemental Complaint A. Procedural background
Before a scheduled trial on the claims Ernest asserted in the complaint, the parties went to mediation in July 2006. At the mediation, they entered into a Memorandum of Understanding (“MOU”), which envisaged Ernest purchasing the defendants’ interests in the Project, subject to due diligence. During such due diligence, despite the efforts of Fruit Corporation, George E., and Helen to restrict Ernest’s access to the Project’s property and records—including instructing Project employees not to speak with Ernest—Ernest discovered substantial issues with the Project’s maintenance and condition. He therefore declined to purchase the defendants’ interests at the price the parties previously settled on. They were then unable to negotiate a purchase price acceptable to both sides.
The defendants moved to enforce the MOU in November 2006. The court allowed the motion and Ernest appealed. The Appeals Court reversed the court’s order on August 28, 2008, remanding the matter to the court for a resolution of the following factual question: whether Ernest declined to purchase the defendants’ interests in the Project based on new and material information brought to light during due diligence, or whether he was simply attempting to avoid his obligation under the MOU. See Hayeck v. Fruit Sever Realty Corp., 2008 WL 3925646 at *2 (Mass.App.Ct. 2008) (unpublished Rule 1:28 decision). After a bench trial, the court found that Ernest’s decision not to purchase the defendants’ interests was based on new and material information. Accordingly, the claims in Ernest’s complaint would proceed to trial.[3]
B. Factual allegations
Helen currently owns the stock of Fruit Corporation, and she and George E. are now the corporation’s officers, directors, and/or managers.
During the appeal process described above, Ernest had identified buyers interested in purchasing the Project at a price that would result in proceeds to the defendants similar to those they would have received under the MOU. Fruit Corporation, George E., and Helen prevented Ernest and the interested buyers from accessing and inspecting the project’s property, and they obstructed sale of the Project.
Ernest further asserts that Fruit Corporation, George E., and Helen have overcharged Ernest for managing the Project; violated the HUD’s regulations by permitting George E. to operate businesses distinct from the Project; violated the Project’s deed and mortgage by conveying Fruit Associates’ personal property to the Project’s management company; fraudulently manipulated the Project’s financial statements, budgets, and expenditures; imposed fake income on Ernest; deprived Ernest of cash distributions as a limited partner; and failed to provide Ernest with an accounting.
Counts V-VH are based on these allegations.
DISCUSSION
I. Motion to Dismiss Standard
When evaluating the legal sufficiency of a complaint pursuant to Mass.RCiv.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in *636 favor of the plaintiff. See Nader v. Citron, 372 Mass. 96, 98 (1977), abrogated on other grounds by Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008). To survive a motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level. . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Id. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . : .” Id., quoting Bell Atl. Corp., 550 U.S. at 557.
II. Analysis[4]
Rather than challenging the sufficiency of the allegations supporting each of Ernest’s claims, the defendants make several broad arguments that apply to more than one claim. The court will address each argument.[5]
A. Ernest’s standing to assert claims
The defendants assert that Ernest does not have standing to bring his claims directly because they are derivative claims based on harm to Fruit Associates.[6] The court disagrees.
A derivative claim is brought to remedy harm to an entity, not harm to the entity’s shareholders or members. See Jackson v. Stuhlfire, 28 Mass.App.Ct. 924, 925 (1990), quoting J.W. Smith & H.B. Zobel, Rules Practice §23.1.1 (1975) (“The derivative action seeks ... to redress a wrong to a corporation or association . . . [OJnly the corporation itself suffers the direct wrong”). Any harm to individuals in a derivative action is indirect only. See id. If, however, one or more individual shareholders or members suffer direct harm, but the entity as a whole suffers no harm, the individuals may maintain an action in their own names rather than bring a derivative action in the name of the entity. See Fronk v. Fowler, 456 Mass. 317, 332 n.23 (2010) (“The availability of suits on behalf of individual partners (or stockholders) is premised on the difficulty of proving harm to the partnership (or corporation) as a whole because only one or a handful of partners have been harmed”).
Here, Ernest’s claims are based on direct harm to him. Due to the structure of the partnership interests of Fruit Associates, the defendants’ allegedly wrongful conduct harmed only Ernest. In other words, Ernest is the only Fruit Associates partner not involved in or benefitting from the alleged wrongdoing. Thus, Fruit Associates as a whole has not been harmed, and derivative claims on its behalf are unnecessary to vindicate its rights. See id. (“When the alleged wrong committed by a partner harms the partnership rather than another partner individually, the appropriate approach is to file a derivative claim”); Smyth v. Field, 40 Mass.App.Ct. 625, 629 (1996) (in derivative claim, “[r]ecoveiy must be for the benefit of the limited partnership”). Only the rights of Ernest, one of the three partners of Fruit Associates, need be vindicated. See Fronk, 456 Mass. at 332 n.23. As such, the court concludes that the claims asserted in the complaint and the supplemental complaint are not derivative.[7]
B. Timeliness of claims
The defendants also argue that several statutes of limitations bar Ernest’s claims. First, as to claims asserted against Paul and Helen as the executors of George N.’s estate, the defendants cite G.L.c. 197, §9, which provides that “an executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased.’’[8] Here, George N. died on July 4, 1997, and Ernest did not file his complaint until September 20, 2000. The court concludes, however, that Ernest is not a “creditor” of George N.’s estate for purposes of G.L.c. 197, §9.
While the term “creditor” “has been given a broad and comprehensive meaning and includes one having a claim not only in contract but also in tort against the estate . . . [t]he statute does not apply to suits to enforce equitable interests in property of a decedent in the possession of an executor.” New England Trust Co. v. Spaulding, 310 Mass. 424, 429-30 (1941). Where Ernest asserts that he was deprived of management fees and the opportunity to purchase the defendants’ interests in Fruit Associates by virtue of the defendants’ fraud, breach of fiduciary duty, and other wrongful conduct, the defendants may hold property belonging to Ernest in a constructive trust. See Stevens v. Nagel 64 Mass.App.Ct. 136, 140 (2005), quoting Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 789 (1994) (“Under Massachusetts law, a court will declare a pariy a constructive trustee of properly for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or in other circumstances indicating that he would be unjustly enriched!.]”); see also Kelly v. Kelly, 358 Mass. 154, 156 (1970). As such, by bringing claims against Paul and Helen as executors, Ernest seeks to enforce an equitable interest in George N.’s estate, not a debt against the estate. See Feeney v. Feeney, 335 Mass. 534, 538 (1957) (G.L.c. 197, §9 did not bar claim seeking trust property held by executrix); New England Trust Co., 310 Mass. at 430-31 (bank not creditor of deceased’s estate where seeking to enforce equitable interest in stock over which it had right of option to purchase).
The defendants also cite G.L.c. 260, §11 as a bar to Ernest’s claims against Paul and Helen as executors of George N.’s estate. That statute requires that claims “founded on any contract made or act done, if made or done by any person acting as the executor ... of the estate of a deceased person, shall be brought within one year . . . after the right of action accrues.” Ernest has not, however, asserted any claims against Paul and Helen based on their conduct as the executors of George *637 N.’s estate. Rather, he alleges fraud committed during George N.’s lifetime, mismanagement of Fruit Associates’ business, and other misconduct, none of which relates to Paul and Helen’s conduct in administering George N.’s estate. See Director of Liquidations v. Exchange Trust Co., 313 Mass. 351, 354 (1943) {“[General Laws c. 260, §11] seems to have been designed primarily to shorten the period of limitation with respect to new obligations incurred in the course of the administration of an estate or of a trust”); see also Reilly v. Whiting, 332 Mass. 745, 747 (1955) (G.L.c. 260, §11 applied to contract entered into by defendant as executrix).
Finally, the defendants cite G.L.c. 260, §2A, the three-year statute of limitations applicable to the accrual of tort claims.[9] They assert that Count I (fraud), Count II (deceit), Count III (self-dealing), and Count IV (breach of fiduciary duty) accrued at or before George N.’s death on July 4, 1997, rendering the claims untimely because Ernest did not file them until September 20, 2000. “A motion to dismiss under Mass.R.Civ.P. 12(b)(6) . . . lies against a complaint which shows on its face that the statute of limitations has run prior to the date the action was commenced.” Babco Indus., Inc. v. New England Merchants Nat'l Bank, 6 Mass.App.Ct. 929, 929 (1978). While the face of the complaint shows that more than three years elapsed between George N.’s death and the filing of the complaint, the court finds that George N.’s death is not the determinative date for the purposes of G.L.c. 260, §2A as applied to Counts I-IV.
The defendants argue that as of George N.’s death, Ernest would have realized that the promised limited liability company had never been formed and would therefore never be formed. The defendants, however, overlook Ernest’s allegation that both George N. and Paul promised to form the limited liability company. Thus, taking this allegation as true and drawing a reasonable inference in Ernest’s favor, it is possible that he believed the formation of a limited liability company to act as Fruit Associates’ general partner could still happen after George N.’s death. The complaint is not clear as to when Ernest learned that he had been harmed by the defendants’ conduct.[10] See Doe No. 4 v. Levine, 77 Mass.App.Ct. 117, 119-20 & n.11 (2010) (“The time at which a cause of action arises is fixed: an event occurred that concurrently or at a later date caused an injury. The discovery of that injury marks the time at which the cause of action accrues” (emphasis in original)). Thus, the court concludes that questions regarding whether Counts I-IV are timely under G.L.c. 260, §2A can be more appropriately addressed at a later proceeding after the development of a factual record. See Donovan v. Philip Morris USA, Inc., 455 Mass. 215, 228 (2009) (“Application of a statute of limitations usually involves a question of fact to be decided by a jury”).
C. Particularity of fraud allegations
A claim of fraud/deceit requires the plaintiff to “allege and prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [her] damage.”[11] Masingill v. EMC Corp., 449 Mass. 532, 540 (2007) (citation omitted). The defendants argue that the complaint “fails to state with the required particularity [of Mass.R.Civ.P. 9(b)] the details of the alleged misrepresentation and/or reliance.” The court disagrees.
The complaint thoroughly outlines the alleged scheme that George N., Paul, and George E. undertook in order to amend Fruit Associates’ membership. George N. and Paul presented documents for Ernest to sign, stating that the addition of Fruit Corporation as a general partner was only temporary. They falsely promised that a limited liability company would be formed to act as the new general partner. Ernest agreed to sign the amendment papers in return for and in reliance on this promise. As a result of the amendment, George N. terminated Concord Management’s role as the Project’s management company, thereby diverting management funds away from Ernest and to the defendants via Fruit Corporation.[12]
All of the elements of a fraud claiming having been asserted in the complaint, Counts I and II will not be dismissed for failure to state a claim upon which relief can be granted.
D. Sufficiency of allegations regarding individual defendants
The defendants argue that neither the complaint nor the supplemental complaint assert any individual misconduct by Paul, Helen, Albert, and George E. that would permit Ernest to recover against them. The court disagrees for the most part.
1. The complaint
As to Paul, Ernest alleges in the complaint that he was involved in the fraudulent scheme to add Fruit Corporation as a general partner of Fruit Associates. According to the complaint, Paul may have drafted the amendment documents and he made misrepresentations about the nature of the amendment and the intention to form a limited liability company to act as general partner of Fruit Associates.
As to George E., the complaint alleges that he was in collusion with George N. and Paul regarding the fraudulent scheme discussed above.
As to Albert, the complaint alleges that he actively participated in the operation of Fruit Associates until early December 1997, a time period during which those managing Fruit Associates allegedly committed fraud. If he occupied a position of trust and confidence, he may have owed a fiduciary duty to Fruit Associates, see Chelsea Indus., Inc. v. Gaffney, 389 Mass. 1, 11 (1983), and any breach of that duty harmed Ernest as the only Fruit Associates partner not participating in or benefiting from the defendants’ misconduct. While the court finds that it is a close question whether Albert may be individ *638 ually liable to Ernest, taking the complaint’s allegations as true and drawing all reasonable inferences in his favor, it concludes that there is a sufficient basis for liability at this stage of the proceedings.
Finally, the court agrees with the defendants that the complaint fails to allege any conduct by Helen that could give rise to liability under Counts I-IV. Ernest argues that she is properly named as a defendant in the complaint because equitable relief may be available against her as the allegedly wrongful recipient of management fees. See Brown v. Accredited Home Lending, Inc., 2009 WL 6297594 at *3 (Mass.Super. 2009) [26 Mass. L. Rptr. 559] (declining to dismiss claims against mortgage loan servicer where, although “(a]dmittedly, most of the counts do not contain allegations specific to” the servicer, servicer is necessary party for rescission). If it should appear at some future time that Helen is a necessary party or a party-in-interest, Ernest may move to join her under Mass.RCiv.P. 19. Otherwise, the court concludes that it is inappropriate to maintain Counts I-IV against Helen where Ernest has failed to allege in the complaint that she did anything unlawful.
2. The supplemental complaint
Under the supplemental complaint, Helen and George E. may be individually liable as officers of Fruit Corporation, which allegedly breached the fiduciary duly of “utmost good faith and loyalty” it owed to Ernest as a co-partner in Fruit Associates. Meehan v. Shaughnessy, 404 Mass. 419, 433 (1989). While “(o]fficers and employees of a corporation do not incur personal liability for torts committed by their employer merely by virtue of the position they hold in the corporation... [they] are liable for torts in which they personally participated.” Lyon v. Morphew, 424 Mass. 828, 831-32 (1997); see also Addis v. Steele, 38 Mass.App.Ct. 433, 440 (1995) (“An officer of a corporation who takes part in the commission of a tort by the corporation is personally liable for resulting injuries” (citation omitted)). The supplemental complaint alleges that Helen and George E. have personally participated in misconduct such as mismanagement of the Project and restricting Ernest’s access to the Project’s property and records.
' As for Paul and Albert, the court has already determined that the supplemental complaint fails to state claims against them upon which relief can be granted. See supra note 5.
ORDER
Based on the foregoing, it is hereby ORDERED that the defendants’ motion to dismiss be ALLOWED as to Count I, Count II, Count III, and Count IV as asserted against Helen L. Hayeck; be ALLOWED as to Count V, Count VI, and Count VII as asserted against Paul G. Hayeck as executor of George N. Hayeck’s estate, Helen L. Hayeck as executor of George N. Hayeck’s estate, Paul G. Hayeck individually, and Albert G. Hayeck; and be DENIED as to the remaining claims. The court takes no action on the defendants’ motion to strike.

According to the supplemental complaint, it was not until after George N.’s death that Concord Management was replaced. Further, in the supplemental complaint, Ernest alleges that it was replaced with Fruit Corporation and/or Concord Apartment Management Corporation, of which Helen and George E. are the officers, directors, and/or managers.

By order dated October 25, 2010, the court allowed Ernest to file a supplemental complaint pursuant to Mass.R.Civ.P. 15(d).

The court takes no action on the defendants’ motion to strike, which seeks, pursuant to Mass.R.Civ.P. 56(e), to strike portions of Ernest’s affidavit submitted in support of his opposition to the motion to dismiss and corresponding allegations in the complaint and supplemental complaint. The affidavit is outside the pleadings for purposes of Mass.R.Civ.P. 12(b)(6) and the court will therefore not consider it.

As an initial matter, the court notes that the supplemental complaint appears to assert Counts V-VII against all of the defendants, despite the fact that it only alleges wrongdoing by Fruit Corporation, Helen, and George E. To the extent that Ernest asserts Counts V-VII against Paul and Helen as executors of George N.’s estate, Paul as an individual, and Albert, those counts are dismissed for failure to state claims upon which relief can be granted.

The defendants also argue that Ernest cannot bring his claims derivatively because he failed to comply with the provisions of G.L.c. 108, §58 and Mass.R.Civ.P. 23.1. Where the court finds Ernest’s claims to be direct, he need not have complied with these procedural requirements.

The court notes that it was a close question as to whether certain claims in the supplemental complaint should have been brought derivatively. The defendants did not provide an analysis of the distinction between claims brought in the complaint and in the supplemental complaint, however, and the court therefore deemed it appropriate to maintain all the claims at this stage of the litigation.

General Laws c. 197, §9 was repealed as of July 1, 2011. See St. 2008, c. 521, §§16, 44. Given that the court concludes that the statute does not apply here, the repeal is immaterial.

In the heading of their argument regarding G.L.c. 260, •§2A, the defendants also cite laches as a bar to Ernest’s claims. They did not actually argue laches, though, and the court therefore does not consider the doctrine.

In the affidavithe submitted in support of his opposition to the motion to dismiss, Ernest provides information about when his claims accrued. As noted earlier, however, see supra note 4, the court may not consider this affidavit on a motion to dismiss.

Fraud and deceit are different names for the same claim. See Equipment & Sys. for Indus., Inc. v. Northmeadows Constr. Co., 59 Mass.App.Ct. 931, 931-32 (2003) (referring to deceit and fraud interchangeably); Nota Constr. Corp. v. Keyes Assocs., 45 Mass.App.Ct. 15, 16 (1998) (same).

The defendants assert that Ernest would have had no expectation of receiving management fees through Concord Management after George N.’s death on July 4, 1997, which served to dissolve that partnership. Even if this were the case, the complaint alleges that George N. terminated Concord Management’s services in August 1996. Almost ayear passed between this termination and Concord Management’s dissolution upon George N.’s death.