MARVIN C. LEWIS & another[1] vs. MICHAEL W. C. EMERSON
& another, trustees[2]
(and a consolidated case[3]).

Suffolk.   December 7, 1983. — March 22, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Civil,* Judgment, Appeal, Findings by judge. *Trust,* Authority of
trustee. *Agency,* Scope of authority. *Contract,* With trustee, Sale of real
estate, With broker. *Broker,* Commission.

The requirement of Mass. R. Civ. P. 58(a) that every judgment must be set
forth on a separate document did not require dismissal of an appeal
following entry of a single document containing the judge's findings of
fact, rulings of law, and judgment where the judgment was visually
distinct from other parts of the document in which it was contained so
that there was no possibility of confusion concerning its import. [519-
520]
Statement respecting sufficiency of appellate argument for purposes of Mass.
R. A. P. 16(a)(4). [521]
An agreement for the purchase and sale of real estate owned by a trust was
valid even though signed by only one of two trustees where the second
trustee, in the presence of all parties, had delegated to the first the task
of signing the document on behalf of the trust. [523-524]
There was no merit to a contention by the defendants in a contract action that
the judge improperly adopted the plaintiffs' requests for findings and
conclusions. [524]
In an action to recover a real estate broker's commission evidence warranted
the judge's conclusion that the buyers produced by the broker were ready

[1] The plaintiffs Marvin C. Lewis and Kenneth P. Lewis engaged in a
joint venture to purchase the real estate in issue.

[2] The defendants, Michael W. C. Emerson and Irene Dwyer Emerson are
trustees of One Goodwin Place Realty Trust, created by them and one Leo J.
Majahad, now deceased, as settlors, under an agreement dated July 27, 1971.

[3] Louise I. Shaw vs. Michael W. C. Emerson & another, trustees. The plaintiff,
Louise I. Shaw, doing business as Shaw Associates, is a licensed real estate
broker with whom trustee Irene Emerson contracted to sell, as exclusive agent,
the trust property located at One Goodwin Place.

and able to perform under a valid agreement and that the closing was prevented by the default of the sellers. [524-525]

In an action for breach of an agreement for the sale of real estate owned by a trust in which the defense of the trustees was wholly insubstantial, the judge properly awarded attorney's fees to the plaintiffs pursuant to G. L. c. 231, § 6F, although in doing so he should not have considered the conduct of the trustees prior to trial. [525-526]

CIVIL ACTIONS commenced in the Superior Court Department on November 6, 1980, and January 26, 1981, respectively.

The cases were heard by *Goldblatt,* J., a District Court judge sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Irene Dwyer Emerson* for Michael W. C. Emerson & another.

*Edmund E. Fleming* (*Karen R. Galat* with him) for Marvin C. Lewis & another.

*John L. Murphy, III,* for Louise I. Shaw.

NOLAN, J. These cases, consolidated below, are before us following allowance of the Emersons' application for further appellate review. *Shaw* v. *Emerson,* 15 Mass. App. Ct. 1104 (1983).

The principal reason for our granting further appellate review in these cases is that the Appeals Court dismissed the appeal in the Lewis case because no final judgment had been entered by the clerk pursuant to Mass. R. Civ. P. 58 (a), as amended, 371 Mass. 908 (1977),[4] and affirmed the judgment in the other case because of the absence of argument as that is required by Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

---

[4] Rule 58 (a) provides in relevant part that: "(1) . . . upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied . . . the clerk, unless the court otherwise orders, shall forthwith prepare, sign and enter judgment without awaiting any direction by the court; (2) upon a decision by the court granting other relief . . . the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it. Every judgment shall be set forth on a separate document . . . A judgment is effective only when so set forth or filed and when entered as provided in Rule 79 (a)."

As we have not previously had an opportunity to discuss at length the "separate document" requirement of rule 58 (a), we take this occasion to do so.

The record before us indicates that on June 25, 1981, the clerk entered on the docket of the Lewis case the judge's findings of fact, rulings of law, and judgment, pursuant to Mass. R. Civ. P. 58 (a), and sent notice to the parties pursuant to Mass. R. Civ. P. 77 (d), as amended, 390 Mass. 1208 (1984). The judge's findings of fact, rulings of law, and judgment is an eight page document which has subheadings delineating the topics. The section pertaining to "Judgment" recites that "[i]t is hereby ordered and adjudged" and goes on to set forth the disposition of the action in three numbered paragraphs.

Apparently the Appeals Court was of the view that this document's format was insufficient to meet the "separate document" requirement of rule 58 (a) because the "judgment" itself was not presented on a separate piece of paper.[5] A literal reading of the rule supports this technical view. However, the purpose of the "separate document" and docket entry requirements is to clarify the time from which postjudgment action shall be commenced. See Reporters' Notes to Mass. R. Civ. P. 58, Mass. Ann. Laws, Rules of Civil Procedure at 550 (1982) (rule's aim is to ascertain the exact judgment date, important for purpose of posttrial motions and appeals). Inasmuch as clarity and certainty are the goals, some commentators have noted, in another context, that "[s]o long as the judgment is visually distinct . . . (that is, so long as the heading and typography clearly show the reader the separate nature of the judgment)," the rule's purpose has been met. J.W. Smith & H.B. Zobel, Rules Practice 432 (1977).

---

[5] The Appeals Court's prior confrontations with rule 58 (a) requirements have in many instances been less harsh than in the present case. In certain instances, the Appeals Court has ordered dismissal of appeals based on failure to conform to rule 58 (a), but then has proceeded to consider the merits "by way of dictum" *Levy* v. *Bendetson,* 6 Mass. App. Ct. 558, 561-562 (1978), and cases cited therein. In at least one case, the Appeals Court used rule 58 (a) to preserve, rather than defeat, appellant's rights. *Bevel-Fold, Inc.* v. *Bose Corp.,* 9 Mass. App. Ct. 576, 579-580 (1980).

Although not binding on this court, it is useful to note that the United States Supreme Court has retreated from its view that Rule 58 (1) of the Federal Rules of Civil Procedure "must be mechanically applied in order to avoid new uncertainties as to the date on which a judgment is entered." *United States* v. *Indrelunas,* 411 U.S. 216, 222 (1973). The Court now posits that "it could not have been intended that the separate-document requirement of Rule 58 be . . . a categorical imperative . . . ." *Bankers Trust Co.* v. *Mallis,* 435 U.S. 381, 384 (1978). In *Bankers Trust Co.,* the Court said that the "separate-document requirement was . . . intended to avoid the inequities that were inherent when a party appealed from a document or docket entry that appeared to be a final judgment . . . only to have the appellate court announce later that an earlier document . . . had been the judgment and dismiss the appeal as untimely." *Id.* at 385. The Court criticized the procedural circularity which would ensue if an appellate court were required, in the absence of a separate document, to dismiss the appeal, whereupon a lower court clerk would enter a separate judgment, thus paving the way for commencing the appellate process in a "timely" manner. This rigid view, the Court noted, would mean "[w]heels would spin for no practical purpose." *Id.*

The posture of the present case illustrates a waste of effort which our courts, as well as the Federal courts, cannot condone. We hold today that where, as in this case, a "judgment" is visually distinct from other parts of the document in which it is contained, such that no confusion can exist concerning its import, and the "judgment" is noted on the court's docket, the requirements of rule 58 (a) will be considered met. Although the better practice calls for the preparation of a separate document of judgment, it is not fair to prevent the parties' exercise of their posttrial and appellate rights on the basis of clerical niceties, for to do so would erode the principle that procedural rules "be construed to secure the just, speedy, and inexpensive determination of every action." Mass. R. Civ. P. 1, as appearing in 385 Mass. 1214 (1982). This principle is especially important where the parties have little, if any, control over the manner in which clerks perform their duties.

Additionally, the Appeals Court affirmed the judgment in the Shaw case because of the Emersons' failure to present "argument" within the meaning of Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). We disagree with this determination. It should be noted that the two cases (Lewis *v.* Emerson and Shaw *v.* Emerson) were consolidated for trial and for appeal. The Emersons were required to file only one brief (in fact, they also filed a reply brief in the Appeals Court). The Emersons' brief contained arguments, with appropriate citations to authority, in support of their appeal on all the issues. That an appellate court might find them unpersuasive does not mean that there has been neglect of the duty to assist the court in its determination of the merits. See *Commonwealth v. LeBlanc,* 373 Mass. 478, 493 (1977). We turn now to the issues presented.

This litigation was commenced by the Lewises to compel conveyances of property located at One Goodwin Place, Boston, held in trust by the Emersons, and by Shaw to recover a brokerage fee in connection with the sale of the One Goodwin Place property. We briefly summarize the findings of fact made by the trial judge, which findings will stand unless clearly erroneous. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974).

Michael W. C. Emerson and Irene Dwyer Emerson, surviving trustees and sole beneficiaries of One Goodwin Place Realty Trust, entered into a written agreement with Louise Shaw in July, 1980, granting Shaw an exclusive right to sell the One Goodwin Place property. The agreement with Shaw was signed by Irene Emerson on behalf of the trust on the instruction of Michael Emerson. Michael Emerson thus delegated all necessary power to bind the trust to Irene Emerson concerning the brokerage agreement, and he intended to be bound thereby.

Shaw produced the Lewises, who were acting as joint venturers, as buyers for the property. The Lewises and Emersons met on August 16, 1980. At that time the Emersons accepted the Lewises' offer to purchase One Goodwin Place. In the presence of all the parties, Michael Emerson stated that Irene Emerson could sign any agreement for the trust, and that his signature was not necessary. The Lewises relied on this statement.

Subsequently, there were several meetings between Irene Emerson and the Lewises' attorney to negotiate financing. The Emersons, the Lewises, and the Lewises' counsel met on September 18, 1980, for a final discussion of their agreement. Michael Emerson announced that he would be out of town for the next few days, but that Irene Emerson could sign the purchase and sale agreement on behalf of the trust. She did so on the following day, thereafter informing Kenneth P. Lewis that they had an agreement.

After several delays, the parties met on October 28, 1980, at which time Michael Emerson stated he had a brokerage agreement with Shaw Associates, although he had not signed the contract. On October 29, 1980, Michael Emerson offered to consummate the sale if the Lewises would pay an additional ten thousand dollars. This suggestion was acceptable to the Lewises. The Lewises and Shaw appeared at the designated time for closing on October 30, 1980, but the Emersons did not appear.

Based on the foregoing, the trial judge concluded that the interests under the trust had merged and the property was held by the Emersons individually; that Michael Emerson designated Irene Emerson his agent, thereby binding himself by her signature on the brokerage and purchase and sale agreements; that the September 19, 1980, purchase and sale agreement was valid and binding upon the Lewises and Emersons; that Michael Emerson had wilfully and without justification misled the Lewises to their detriment; and that Shaw had produced buyers who were at all times ready, willing, and able to perform, and would have performed but for the default of the defendants, thereby depriving Shaw of her commission.

The trial judge ordered specific performance of the purchase and sale agreement, ordered payment of Shaw's brokerage fee by the Emersons, and awarded the Lewises attorneys' fees as damages.

The Emersons assert that there exists error in the trial judge's finding concerning merger of the interests of the trust, in adopting the plaintiffs' requests for findings and conclusions, in ordering specific performance where only one trustee had signed

the agreement, in ordering payment of the broker's commission, and in awarding attorneys' fees. We perceive error only as to the award of attorneys' fees, and affirm the remainder of the judgments.

1. *Merger of the interests of the trust.* The Emersons argue at length that no merger of the interests under the trust occurred when, because of the death of another trustee, they became sole trustees and sole beneficiaries of the trust. However, without commenting on the accuracy of the trial judge's ruling, we believe that the resolution of the merger issue was not necessary to the trial judge's conclusion that a valid purchase and sale agreement had been executed, because that conclusion is correct regardless of the existence of the trust. If the interests of the trust had not merged, it would not have been improper to delegate to a cotrustee the ministerial task of signing documents on behalf of the trust, although the trust instrument was silent on this issue. This delegation would not be the same as the abdication of all responsibility that is recognized as improper delegation. See 3 G. Newhall, Settlement of Estates § 430, at 85-86 (4th ed. 1958). Additionally, the trustees cannot benefit by an assertion that language in the trust agreement requires the trustees' concurrence to bind the trust where one trustee made contrary representations to third parties in the presence of another trustee, who made no objection thereto. While it is the general rule that one dealing with a trustee must be on his guard as to his powers, *Horowitz* v. *State St. Trust Co.,* 283 Mass. 53, 58 (1933), this cannot be so where the trustee's own acts would lull an ordinary person into a false sense of security concerning the other trustee's authority. The trustees cannot ignore the language of the trust instrument when it inconveniences them but then rely on the language and shield themselves from the consequences of their actions when events go awry, particularly when others have relied on their representations. Further, even if the trust language required concurrent action by the trustees, the trustees' failure so to act would not shield them from personal liability. *Downey Co.* v. *Whistler,* 284 Mass. 461, 466 (1933). Both trustees having joined in what they now assert was a wrongful delega-

tion, they cannot be relieved of responsibility. See *Ashley* v. *Winkley,* 209 Mass. 509, 528-529 (1911).

Alternatively, if the interests under the trust had merged, leaving the Emersons as individual owners of the real estate, the conclusion of the trial judge would be supportable on ordinary agency principles. Cf. *Rozene* v. *Sverid,* 4 Mass. App. Ct. 461, 464 (1976). We leave to another day elaboration on the merger issue, because there was no error in the trial judge's determination concerning the validity of the purchase and sale agreement.

2. *Adoption of requested findings, rulings, and orders.* We have previously cautioned against a trial judge's verbatim adoption of a litigant's proposed findings and conclusions, noting that to be proper a judgment must give evidence of independent judicial consideration of the issues, not merely a slavish reliance on a party's view of the law. *Cormier* v. *Carty,* 381 Mass. 234, 236-238 (1980). Nevertheless, the trial judge may and should consider proposed findings and orders where doing so will be of assistance in fashioning a judgment. *Id.* at 237 n.5. While there exists no clear cut boundary defining the proper use of such drafts, there was no erroneous, wholesale "verbatim" adoption of requests in this case since the Emersons concede that several of the suggestions were discarded by the judge. Further, we do not see how the Emersons have been harmed.

3. *Compelling specific performance where the agreement was signed by only one trustee.* The Emersons' argument on this score merely reworks, without adding new substance, issues of agency and delegation discussed above, and thus is without merit for reasons previously stated.

4. *Payment of the broker's fee.* Three requirements must be met before a broker's commission is due: first, production by the broker of a purchaser ready, willing and able to perform on terms fixed by the seller; second, entry into a contract to purchase by buyer and seller; and third, completion by passage of title in accordance with the agreement, unless closing is prevented by the wrongful conduct of the seller. *Tristram's Landing, Inc.* v. *Wait,* 367 Mass. 622, 629 (1975). The parties,

of course, may vary these conditions by agreement. Here, the trial judge concluded that the buyer, produced by Shaw acting as broker, was ready and able to perform under a valid agreement, and that the closing was prevented by the default of the Emersons. Nothing indicates that this determination is either factually erroneous or incorrect as a matter of law. Inasmuch as the trial judge's findings and conclusions demonstrate that Shaw's situation met the criteria announced in *Tristram's Landing, supra,* the award of the commission was proper.

5. *The award of attorneys' fees.* The trial judge found that Michael Emerson deliberately intended to mislead the Lewises, and did so, and that such conduct was "wholly insubstantial, frivolous and not advanced in good faith," thereby ordering an award of attorneys' fees under G. L. c. 231, § 6F.[6] More particularly, the judge predicated his order for attorneys' fees under § 6F on one of his rulings in which he concluded that the "actions of Michael W. C. Emerson in attempted avoidance of the September 19, 1980 agreement, and of the obligations of the August 16, 1980 agreement are deliberate and willful and without justification. Said actions were deliberately intended to mislead the Lewises and to misrepresent material facts to them, with the intention that they rely on such actions and misrepresentations to their detriment and damage. Marvin C. Lewis and Kenneth P. Lewis were misled, did so reply to their individual and joint detriment and damage." That ruling, however, merely restated the familiar principle "that if a person

---

[6] General Laws c. 231, § 6F, inserted by St. 1976, c. 233, § 1, provides in relevant part: "Upon motion of any party in any civil action in which a finding, verdict, decision, award, order or judgment has been made by a judge or justice or by a jury, auditor, master or other finder of fact, the court may determine . . . that all or substantially all of the claims, defenses, setoffs or counterclaims, whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith. The court shall include in such finding the specific facts and reasons on which the finding is based.

"If such a finding is made with respect to a party's claims, the court shall award to each party against whom such claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims."

make[s] a representation of a fact, as of his own knowledge, in relation to a subject matter susceptible of knowledge, and such representation is not true; if the party to whom it is made relies and acts upon it, as true, and sustains damage by it, it is a fraud and deceit, for which the party making it is responsible.'' *Powell* v. *Rasmussen,* 355 Mass. 117, 119 (1969), quoting *Page* v. *Bent,* 2 Met. 371, 374 (1841). General Laws c. 231, § 6F, on the other hand, does not focus on the conduct of the defendant prior to trial; rather, it focuses on the conduct of the litigation by the defendant.

The judge correctly decided to award counsel fees. In so ruling, however, the judge focused on the conduct of the defendants *prior to trial.* The judge, however, should have considered the claim that Irene Emerson lacked authority to sign her husband's name. That defense, which is predicated on agency grounds, or more particularly, on Michael Emerson's repudiation of the authority given to his wife, Irene Emerson, is ''wholly insubstantial'' as that term is used in § 6F. This is precisely the species of transparent defense to which a party should not be required to respond. It is a defense without even a colorable basis in law, and it represented a significant part of the Emersons' defense.

Because we have no way of knowing what the trial judge considers ''reasonable counsel fees and other costs and expenses'' incurred in responding to this defense, we remand the Lewis case to the Superior Court for such determination.[7] In all other respects, the judgment in that case is affirmed. The judgment in the Shaw case is affirmed.

*So ordered.*

---

[7] In remanding this matter for reconsideration of attorney's fees under the appropriate standard, we do not mean to disparage the judge's correct decision to invoke the provisions of G. L. c. 231, § 6F.