## ROBERT L. FRONK & others[1] vs. JOHN P. FOWLER & others.[2]

Suffolk. December 7, 2009. - March 25, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Appeals Court,* Appeal from order of single justice. *Practice, Civil,* Frivolous action, Attorney's fees, Costs, Appeal. *Partnership,* Agreement, Fiduciary duty. *Corporation,* Corporate opportunity. *Contract,* Performance and breach.

Discussion of the standard employed by this court in reviewing an award by a single justice of the Appeals Court of attorney's fees and litigation costs under G. L. c. 231, § 6G. [328]

A single justice of the Appeals Court erred in vacating a Superior Court judge's award of attorney's fees and litigation costs under G. L. c. 231, § 6F, to the defendants in a civil action brought by plaintiffs claiming, inter alia, that the defendants denied them an opportunity to participate in a business opportunity, where the breach of contract and fiduciary duty bases of that claim were frivolous from the inception of the litigation (given that the breach of contract theory adhered to an implausible interpretation of the unambiguous partnership agreement between the parties, and the fiduciary duty theory, when asserted, had no basis in the law) [328-332]; and where the remainder of the plaintiffs' claims likewise so lacked factual or legal support as to raise an inference of bad faith [333-336].

This court remanded for further consideration an order of the Appals Court on a motion for appellate fees and costs under G. L. c. 211A, § 15, and Mass. R. A. P. 25, where the order was based in part on a finding that was incorrect as a matter of law. [336]

Civil action commenced in the Superior Court Department on March 21, 2002.

After review by the Appeals Court, and denial by the Supreme Judicial Court of leave to obtain further appellate review, a proceeding for review of an order awarding attorney's fees and costs under G. L. c. 231, § 6F, was heard in the Appeals Court by *Scott L. Kafker,* J., and a motion for an award of certain attorney's fees and costs on appeal was denied by a panel in the Appeals Court.

The Supreme Judicial Court granted an application for direct

---

[1]Jack Saltiel and Maila L. Walter.

[2]Jeffrey A. Millman; Robert Lee Wolff, Jr.; The Cambridge Company, Inc.; and Maple Leaf Cambridge Corporation.

appellate review of the order of the single justice and granted leave to obtain further appellate review of the order of the full panel.

*Stephen H. Oleskey (Timothy R. Shannon & Mark C. Fleming* with him) for the defendants.

*Lawrence G. Green (Michael K. Sugrue* with him) for the plaintiffs.

CORDY, J. This is a consolidated appeal from the separate orders of a single justice of the Appeals Court and of a full panel of the Appeals Court concerning the award of attorney's fees and litigation costs to the defendants. After a jury-waived trial, a Superior Court judge granted the defendants' motion for fees and costs under G. L. c. 231, § 6F, finding that "substantially all, if not all, of the plaintiffs' claims were wholly insubstantial, frivolous, and not advanced in good faith." A single justice of the Appeals Court vacated the award. We granted the defendants' application for direct appellate review. In addition, we granted the defendants' application for further appellate review of an order by a full panel of the Appeals Court denying the defendants' motion for appellate fees and costs under G. L. c. 211A, § 15, and Mass. R. A. P. 25, as appearing in 376 Mass. 949 (1979), arising out of the merits appeal of this case, *Fronk* v. *Fowler*, 71 Mass. App. Ct. 502 (2008). We conclude that the plaintiffs' claims were frivolous and insubstantial. Consequently, we reinstate the fees and costs awarded by the trial judge and we remand to the Appeals Court its decision so that it may exercise its discretion with respect to appellate fees and costs.

1. *Background.* We draw the following from the findings of fact issued by the judge at the close of the trial. Those findings, having been described as "fully supported in the record," and affirmed by the Appeals Court, *Fronk* v. *Fowler, supra* at 503, are conclusive and "unassailable" in this context. *Danger Records, Inc.* v. *Berger*, 444 Mass. 1, 12 n.11 (2005) (*Danger Records*).

a. *The limited partnership.* In 1984, the defendants, Robert L. Wolff, Jr.; John P. Fowler; and Jeffrey A. Millman, established The Cambridge Company, Inc., for the purpose of engaging in the real estate business.[3] Through The Cambridge Company, the

---

[3] The defendants each brought expertise to the venture. Robert Wolff was a real estate developer with experience working for a mortgage banking firm

defendants identified properties to develop and created individual limited partnerships to acquire them. In 1985 they entered into a purchase and sale agreement to acquire a commercial property located at 23 East Street in Cambridge, a former hot dog factory, which they planned to renovate and lease. Consistent with their business model, their plan was to form a limited partnership that would assume ownership and management of the property.

Concurrent with their negotiations to purchase the 23 East Street property, the defendants entered lease negotiations with the plaintiffs, Ed Walter, Jack Saltiel, and Robert Fronk, who were the principals of Compumart Corporation. The plaintiffs were interested in leasing three floors of the building for their business operations. Over the course of the negotiations, the plaintiffs expressed interest in acquiring an ownership interest in the limited partnership. The defendants agreed, and in exchange for a fifteen-year lease and a $500,000 letter of credit to be used for project cost overruns, they entered into a limited partnership agreement with the plaintiffs creating the Maple East Associates Limited Partnership (MEALP). The defendants were the general partners of MEALP and held a sixty per cent interest in it. The plaintiffs were limited partners, possessing a forty per cent interest.[4] Throughout the negotiations, the defendants made it clear to the plaintiffs that they would continue to acquire other properties outside the partnership.

The partnership agreement included the following terms. Section 4 set out the limited purpose of MEALP:

"The purpose of the partnership shall be (i) to acquire

and a major real estate development firm. John Fowler was a mortgage broker. He founded his own firm, Fowler, Goedecke, Ellis & O'Connor, that specialized in pairing commercial lenders with real estate ventures. Jeffrey Millman was an experienced architect and project manager.

[4]Although Walter, Saltiel, and Fronk were the original limited partners of Maple East Associates Limited Partnership (MEALP), Ed Walter is not a party to this action. In 1998, Walter transferred his interest in the partnership to his wife, Maila Walter. Maila Walter, along with Fronk and Saltiel, are the plaintiffs in the present action. However, for the sake of clarity, Ed Walter is included in the term "plaintiffs" for events prior to 1998.

A fourth limited partner, Stephen Schein, was added in 1986. However, he did not participate in this litigation.

The defendants' original company, The Cambridge Company, Inc., is also a named defendant in this case although it was not a general or limited partner of MEALP.

approximately 32,268 square feet of land and the six story concrete building thereon located at 23 East Street, Cambridge, Massachusetts (the 'Property'); (ii) to renovate such building in such manner as the General Partners shall determine (the 'Project'); (iii) to own, operate and manage the Project; and (iv) to lease, sell, acquire or otherwise deal with the Project and other real estate in such manner as the General Partners shall determine."

Section 5 authorized the defendants, as general partners, to acquire property in furtherance of MEALP's limited purpose:

"In furtherance of its purpose, *but subject to all other provisions of this Agreement*, the partnership is authorized to: . . .

"5.2 acquire by purchase, lease or otherwise any real or personal property which may be necessary, convenient or incidental to the accomplishment of the purposes of the partnership;

"5.3 own, construct, operate, maintain, finance, improve, sell, convey, assign, mortgage or lease any real estate and any personal property necessary, convenient or incidental to the accomplishment of the purposes of the partnership" (emphasis added).

Significantly, the defendants were not required to make such acquisitions, and the authorizations in § 5 explicitly were subject to other provisions in the partnership agreement. One of those provisions was § 13.2:

"It is expressly understood that a General Partner may engage in any other business or investment, including the ownership of or investment in real estate and the operation and management of real estate, and neither the partnership nor any of the partners thereof shall have any rights in and to said businesses or investments, or the income or profits derived therefrom."

Therefore, although authorized to acquire real estate "convenient" to the purpose of MEALP, the defendants were also free to continue their separate real estate business.

Finally, § 12.5 of the partnership agreement anticipated that

the defendants would use their respective skills to provide services to MEALP but required them to charge "terms and conditions which [were] not materially less favorable to the partnership than the terms and conditions which would be available from unrelated parties," that is, market rates.

On the same day that MEALP was formed, the defendants obtained a $5.3 million mortgage on its behalf, guaranteeing the debt personally.[5] Consistent with the partnership agreement, MEALP paid Fowler's firm for its role in securing the mortgage. The fees paid were "in accordance with industry standards." MEALP also paid fees to Millman for his services as architect and project manager. Again, the fees were market rate. Pursuant to its fifteen-year lease with MEALP, the plaintiffs' company moved into 23 East Street in January, 1986. However, in December, 1986, the plaintiffs' company went bankrupt and defaulted on its lease. It vacated the building in 1987.[6] The default cost MEALP hundreds of thousands of dollars. Nevertheless, the plaintiffs remained limited partners in MEALP.

The defendants continued to manage MEALP over the next decade, saving it from failure several times and successfully refinancing the property to reduce the debt burden by approximately $1.5 million.[7] MEALP paid fees to entities related to the defendants for various necessary services over this time, all of which were at or below market rates.

Separately, the defendants also continued to grow their real estate portfolio. In 1994, they created a new investment partnership to acquire two warehouse-type buildings at 9 East Street in Cambridge, and in 1997 they acquired another warehouse at 1 East Street, again through the creation of a separate investment partnership. The defendants did not invite the plaintiffs to participate in either of these ventures.

In 1998, the defendants were approached by Charles E. Smith Residential Realty LP (Smith), a publicly traded real estate

---

[5]The plaintiffs provided no personal guarantees on the loan.

[6]In addition to the plaintiffs' lease default, the judge found no evidence that the $500,000 letter of credit posted by the plaintiffs for project cost overruns was ever drawn on.

[7]As a condition of refinancing the property, the defendants resigned as general partners of MEALP and were replaced in 1996 by a "bankruptcy remote corporation" called the Maple Leaf Cambridge Corporation, also a named defendant in this case.

investment trust that was interested in purchasing the defendants' properties at 1 and 9 East Street. Smith had no interest in MEALP's 23 East Street property, but the defendants insisted the property be included.[8] Smith agreed to purchase all three properties for $28 million, which included an $8 million price for 23 East Street, not accounting for the debt on the property. This was an "extremely favorable" price.[9] As a consequence, the plaintiffs — who parted with nothing to acquire their partnership interests in MEALP and who contributed no time, energy, or capital toward the management of its property — collectively received $921,600 as a result of the sale.

b. *Complaint and trial.* Notwithstanding the apparently favorable outcome, the plaintiffs filed a complaint against the defendants alleging breach of contract, breach of fiduciary duty, fraud and misrepresentation, misappropriation of business opportunity, and restitution.[10] The judge organized the contentions in the complaint into three categories. The first category consisted of the plaintiffs' contention that the defendants denied them an opportunity to participate in the 1 and 9 East Street properties (business opportunity claim). In support of this claim, the plaintiffs asserted that the defendants were required to afford them the opportunity both under the terms of the partnership agreement and in accordance with their fiduciary duties as general partners. The second category included the plaintiffs' contentions that the defendants had charged MEALP excessive fees during their

---

[8]The judge found:

"At the time, 23 East Street was not particularly commercially attractive for many reasons. It was an awkward, visually unattractive building with no major road frontage, an awkward location without street footage, an unreachable loading dock, a powerful and antagonistic neighbor . . . in a complicated regulatory environment and did not meet conventional standards for office layouts due to its . . . layout construction. 23 East Street is a poured-in-place concrete building that is constantly moving, with an ongoing risk of continued spalling of the concrete frame due to water penetration. 23 East Street was encumbered by a long-term mortgage, which effectively could not be prepaid until 2012, was encumbered by several long-term leases and had grossly insufficient parking to meet those leases."

[9]Charles E. Smith Residential Realty LP had valued the 23 East Street property, for development purposes, at $3.6 million.

[10]The complaint also sought an accounting, but the plaintiffs did not pursue it.

management of the property (related party transactions claim). The third category consisted of the plaintiffs' contention that the defendants had materially undervalued 23 East Street in the sale to Smith (valuation claim).

After a jury-waived trial, the judge found in favor of the defendants on all three claims.[11] With respect to the business opportunity claim, the judge concluded it could stand on neither of its two legs. First, she found that the defendants did not commit a breach of the partnership agreement because it clearly permitted the defendants to pursue other real estate business opportunities without the plaintiffs. Second, she found that the defendants did not violate their fiduciary duty with respect to such opportunities because the parties had shaped that duty in the terms of the partnership agreement and, regardless, the purchase of 1 and 9 East Street properties was not a business opportunity of MEALP because it was not related to the limited purpose of the partnership. See *Durfee* v. *Durfee & Canning, Inc.*, 323 Mass. 187, 198 (1948) ("acquisition of the property must be . . . within the corporate purpose"); *Haseotes* v. *Cumberland Farms, Inc.*, 284 F.3d 216, 228 (1st Cir. 2002), citing *Durfee* v. *Durfee & Canning, Inc.*, *supra* ("Normally, a corporate opportunity is thought of as a business or investment opportunity within the sphere of, or somehow related to, the corporation's own activities"). The judge further found that because the business opportunity in question, had it existed, would have belonged to MEALP and not the limited partners, the claim could only have been brought derivatively on behalf of the partnership, not on behalf of the limited partners themselves. See *Smyth* v. *Field*, 40 Mass. App. Ct. 625, 629 (1996). With regard to the plaintiffs' related party transactions claim, the judge found that all the fees were reasonable.[12] Indeed, the plaintiffs stipulated that they would offer no evidence that most of the fees charged by defendant Fowler were unreasonable, and as for the rest of the fees, the plaintiffs offered no evidence that they were not market rate. Finally, the judge concluded that the valuation of 23 East Street

---

[11]The judge dismissed the business opportunity claim prior to trial but addressed it at length in her findings of fact and conclusions of law issued after the trial.

[12]The judge also found that the statute of limitations had run on several of the transactions included in the complaint.

was reasonable, both in light of the defendants' affirmative evidence and the complete failure by the plaintiffs to contradict it.[13]

c. *Direct appeal.* The plaintiffs appealed to a full panel of the Appeals Court, which affirmed the decision of the judge. *Fronk v. Fowler,* 71 Mass. App. Ct. 502 (2008). The Appeals Court largely adopted the judge's reasoning with regard to the valuation and related party transactions claims. *Id.* at 511-512. On the business opportunity claim, however, the Appeals Court expanded the rationale supporting the judge's decision. Specifically, the court cited a recently decided case, *Chokel* v. *Genzyme Corp.,* 449 Mass. 272, 278 (2007) (*Chokel*), and its predecessor, *Blank v. Chelmsford Ob/Gyn, P.C.,* 420 Mass. 404, 408 (1995) (*Blank*), for the proposition that parties may shape their fiduciary duties by the terms of a partnership agreement.[14] Thus, based on different cases but affirming the same proposition, the Appeals Court held that the partnership agreement explicitly freed the defendants from any fiduciary obligation to offer the 1 and 9 East Street properties to the partnership. *Fronk* v. *Fowler, supra* at 507-508. The Appeals Court otherwise agreed with the judge that the 1 and 9 East Street properties were not related to the purpose of MEALP and that the defendants had not committed a breach of the partnership agreement's terms. *Id.* at 509-511. The court did not address the question whether the plaintiffs' fiduciary business opportunity claim should have been brought derivatively.

d. *Motions for fees and costs.* The defendants filed a motion for fees and costs at the close of trial, G. L. c. 231, § 6F. The judge granted the defendants' motion before the plaintiffs' direct appeal was heard by the Appeals Court.[15]

Section 6F authorizes an award of reasonable costs and attorney's fees incurred in litigation when "all or substantially all" of the opposing party's claims are "wholly insubstantial, frivolous

[13]The plaintiffs retained and offered expert testimony at the trial regarding the valuation of 23 East Street, but after cross-examination of the expert, the plaintiffs joined the defendants' motion to strike the testimony because of its substantial flaws. The plaintiffs then admitted that they could not offer any testimony that the sale price of 23 East Street was unreasonable.

[14]The judge had relied on a series of Superior Court decisions for that proposition.

[15]The defendants also filed a motion for costs and fees pursuant to G. L. c. 261, but the judge found that the motion was time barred.

and not advanced in good faith."[16] If the judge finds that the claims meet that standard, "the statute mandates the award of reasonable counsel fees and other costs and expenses." *Masterpiece Kitchen & Bath, Inc.* v. *Gordon*, 425 Mass. 325, 330 (1997).

Here, the judge issued separate findings of fact and conclusions of law in support of her conclusion that the plaintiffs' entire case was insubstantial, frivolous, and not brought in good faith. In reaching that result, the judge recapitulated the total absence of evidentiary or legal support for the plaintiffs' case and concluded that it was "without even a colorable basis in law." *Lewis* v. *Emerson*, 391 Mass. 517, 526 (1984). Under the terms of § 6F, the judge was therefore bound to award fees and costs. She ordered materials and briefing from the parties concerning the proper calculation of fees and costs, and then awarded the defendants $1,161,375.10 in attorney's fees and $69,546.16 in various costs.[17]

The plaintiffs directed their appeal of the § 6F award to a single justice of the Appeals Court as required by G. L. c. 231, § 6G.[18] The single justice stayed the award pending a review of

---

[16]General Laws c. 231, § 6F, provides in relevant part:

"Upon motion of any party in any civil action in which a finding, verdict, decision, award, order or judgment has been made by a judge or justice or by a jury, auditor, master or other finder of fact, the court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims, defenses, setoffs or counterclaims, whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith. The court shall include in such finding the specific facts and reasons on which the finding is based.

"If such a finding is made with respect to a party's claims, the court shall award to each party against whom such claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims."

[17]On February 26, 2007, the judge set forth her calculation of fees and costs. Her detailed decision and order fulfilled the requirement that she "specify in reasonable detail the method by which the amount of the award was computed and the calculation thereof." G. L. c. 231, § 6F, fourth par. The parties do not contest her calculations.

[18]General Laws c. 231, § 6G, provides in relevant part:

"Any party aggrieved by a decision on a motion pursuant to section

the plaintiffs' direct appeal. The appeal was decided on April 4, 2008, and we denied further appellate review.[19]

The defendants also petitioned the Appeals Court for appellate fees and double costs in accordance with G. L. c. 211A, § 15, and rule 25.[20] Unlike awards under § 6F, the Appeals Court has considerable discretion over when to award appellate

---

six F may appeal as hereinafter provided. If the matter arises in the superior . . . court, the appeal shall be to the single justice of the appeals court at the next sitting thereof. . . . The court deciding the appeal shall review the finding and award, if any, appealed from as if it were initially deciding the matter, and may withdraw or amend any finding or reduce or rescind any award when in its judgment the facts so warrant.

"Any party may file a notice of appeal with the clerk or register of the court hearing the motion within ten days after receiving notice of the decision thereon. The clerk or register shall then forward the motion, the court's findings and award, and any other documents relevant to the appeal to the clerk of the court deciding the appeal who, upon receipt thereof, shall refer the matter to the court for speedy decision and shall notify the parties of such decision, which shall be final. Any appeal to the supreme judicial court or the appeals court shall proceed according to the Massachusetts Rules of Appellate Procedure; any appeal to a single justice of the Appeals Court shall proceed under the rules for the regulation of practice before a single justice of that court. The payment of any award made pursuant to section six F shall be stayed until the completion of all appeals relating to the civil action in which the award was made."

[19]The single justice who heard the § 6F appeal was also a member of the full panel of the Appeals Court that decided the direct appeal and decided the motion for appellate fees and costs under G. L. c. 211A, § 15.

[20]Decisions concerning the award of litigation costs follow different appellate paths depending on their origin.

Motions for trial court fees and costs under G. L. c. 231, § 6F, proceed according to an " 'anomalous route of appeal' by way of [G. L. c. 231,] § 6G." *Danger Records, Inc.* v. *Berger*, 444 Mass. 1, 8 (2005) *(Danger Records)*, quoting *Bailey* v. *Shriberg*, 31 Mass. App. Ct. 277, 282 (1991). A decision pursuant to § 6F made in the Superior Court must be appealed to a single justice of the Appeals Court. G. L. c. 231, § 6G. Appeals from the single justice proceed according to the Massachusetts Rules of Appellate Procedure. *Bartlett* v. *Greyhound Real Estate Fin. Co.*, 41 Mass. App. Ct. 282, 288-289 (1996). Accord *Danger Records, supra* at 10-11. Thus, such an appeal may be heard by a full panel of the Appeals Court, Mass. R. A. P. 3 (a), as amended, 378 Mass. 927 (1979), or by this court if an application for direct appellate review is granted. Mass. R. A. P. 11 (a), as amended, 378 Mass. 938 (1979).

In contrast, according to G. L. c. 211A, § 15, and Mass. R. A. P. 25, as appearing in 376 Mass. 949 (1979), parties may seek appellate costs and fees

fees and costs, even if it concludes that the appeal was frivolous.[21] See *Masterpiece Kitchen & Bath, Inc.* v. *Gordon, supra* at 329-330; *Avery* v. *Steele*, 414 Mass. 450, 455 (1993).

On December 16, 2008, both a panel of the Appeals Court and the single justice determined that the plaintiffs' business opportunity claim was not frivolous and therefore that awards under G. L. c. 231, § 6F, and G. L. c. 211A, § 15, were not warranted.

We begin with our review of the decision of the single justice vacating the judge's award of fees and costs under G. L. c. 231, § 6F. We then proceed to review the decision denying appellate fees and costs by the Appeals Court.

2. *Award under G. L. c. 231, § 6F.* General Laws c. 231, § 6G, vests the single justice with considerable leeway when reviewing the award or denial of § 6F fees and costs. The statute states that the single justice "shall review the finding and award, if any, appealed from as if [he] were initially deciding the matter, and may withdraw or amend any finding or reduce or rescind any award when in [his] judgment the facts so warrant." G. L. c. 231, § 6G. "[T]he review is thus de novo in the sense that the single justice may draw his or her own ultimate conclusions as to the merits of a fee award," although the single justice is bound by "the subsidiary facts as found by the trial judge" in her § 6F

from the Appeals Court. Appeals from such decisions may be sought by applying for further appellate review. Mass. R. A. P. 27.1, as amended, 426 Mass. 1602 (1998); *Masterpiece Kitchen & Bath, Inc.* v. *Gordon*, 425 Mass. 325, 330 n.11 (1997).

[21]General Laws c. 211A, § 15, provides in relevant part:

> "If, upon the hearing of an appeal or exceptions in any proceeding, it appears that the appeal or exceptions are frivolous, immaterial or intended for delay, the appeals court may, either upon motion of a party or on its own motion, award against the appellant or excepting party double costs from the time when the appeal was taken or the exceptions were allowed, and also interest from the same time at the rate of twelve per cent a year on any amount which has been found due for debt and damages, or which he has been ordered to pay, or for which judgment has been recovered against him, or may award any part of such additional costs and interest."

Rule 25 provides in relevant part:

> "If the appellate court shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee, and such interest on the amount of the judgment as may be allowed by law."

decision unless they are without basis. *Danger Records, supra* at 9, quoting *Miaskiewicz* v. *LeTourneau,* 12 Mass. App. Ct. 880, 881, 882 (1981). See *Hahn* v. *Planning Bd. of Stoughton,* 403 Mass. 332, 337-338 (1988). In order to accomplish the statute's goal of a "speedy decision," the single justice considers an abbreviated record made up of the lower court's § 6F findings and award, as well as other "relevant" materials. G. L. c. 231, § 6G. See *Miaskiewicz* v. *LeTourneau, supra* (single justice not required to review entire record). In this case, for example, the single justice reviewed the judge's § 6F findings of fact and her trial findings of fact, as well as relevant portions of the trial record and limited briefing by the parties.

a. *Standard of review.* Our review of a decision of the single justice made under G. L. c. 231, § 6G, is "of extremely limited scope." *Danger Records, supra* at 11. In addition to the broad grant of authority to perform a de novo review, § 6G states that the decision of the single justice "shall be final." While this does not divest this court or the Appeals Court from reviewing the decision further according to the rules of appellate procedure, see *Bartlett* v. *Greyhound Real Estate Fin. Co.,* 41 Mass. App. Ct. 282, 289-290 (1996), it does require a reviewing court to treat the "underlying [§ 6F] factual findings adopted and accepted by the single justice . . . as 'final' and . . . not themselves subject to further review." *Danger Records, supra* at 12-13. Thus, we review the single justice's decision only for abuse of discretion or other error of law. *Id.*[22]

b. *Plaintiffs' business opportunity claim.* The single justice

[22]As a preliminary matter, it is important to clarify exactly what is before us on appeal. By one reading of the single justice's decision there is some question about what subsidiary facts he "adopted and accepted." *Danger Records, supra* at 12. He limited his decision to a determination of two questions. First, he concluded that the language of the partnership agreement concerning outside business ventures by the defendants was "not entirely self-evident." Thus, the single justice relied on the actual partnership agreement and made no reference to any of the judge's findings about related facts. Second, the single justice held that it was not settled in 2002 that a partnership agreement can alter or terminate fiduciary duties. He based this conclusion entirely on law.

A literal reading of our decision in *Danger Records, supra,* might imply that our review of the single justice should be limited to those facts that the single justice explicitly "adopted and accepted," that is, the partnership agreement. See *id.* However, our holding must be read in light of the language of § 6G. The single justice was not required affirmatively to adopt and accept

reversed the award of fees in this case based on two conclu-
sions of law. First, he determined that the language of the part-
nership agreement was sufficiently ambiguous as to give that
aspect of the plaintiffs' business opportunity claim a degree of
foundation and therefore the breach of contract business op-
portunity claim was not frivolous. Specifically, the single justice
concluded that the partnership agreement provision that author-
ized the defendants to make convenient acquisitions of real
estate on behalf of MEALP clouded the meaning of the provi-
sions that expressly authorized them to pursue separate real
estate ventures and the provision that limited MEALP's purpose
to the acquisition and management of a single property. Second,
he concluded that the plaintiffs' fiduciary business opportunity
claim, while unmeritorious, had been based on unsettled law,
the uncertainty of which gave the plaintiffs a reasonable belief
that their claim had a chance of success. Both conclusions were
errors of law.

A claim is frivolous if there is an "absence of legal or factual
basis for the claim," *Demoulas Super Mkts., Inc.* v. *Ryan*, 70
Mass. App. Ct. 259, 267 (2007), and if the claim is "without
even a colorable basis in law." *Lewis* v. *Emerson*, 391 Mass. 517,
526 (1984). The proper vantage point for evaluating whether a
claim is frivolous is from the time the claim was brought and
over the course of the litigation. See *id.* In this case, both the
breach of contract and fiduciary duty bases of the plaintiffs' busi-
ness opportunity claim were frivolous from the inception of the
litigation.

We do not agree with the single justice that the plaintiffs
adhered to a plausible interpretation of the partnership agree-
ment. As the Appeals Court noted in its merits decision, the
plaintiffs' claim was based on a confined reading of the partner-
ship agreement that emphasized the provisions authorizing acquisi-
tions "convenient" to the purpose of the partnership. See *Fronk*
v. *Fowler*, 71 Mass. App. Ct. 502, 509-510 (2008). See also *Starr*
v. *Fordham*, 420 Mass. 178, 190 (1995), quoting *Boston Elevated*

the judge's § 6F findings. What matters is that the findings of the judge have
"already been subjected to one level of appeal," *Danger Records, supra* at 12,
and have not been "withdraw[n] or amend[ed]." G. L. c. 231, § 6G. Having
survived one round of appellate review intact, the § 6F factual findings of the
judge are final. Therefore we review the single justice's decision for abuse of
discretion or other errors of law in light of the entire record submitted to him.

*Ry.* v. *Metropolitan Transit Auth.*, 323 Mass. 562, 569 (1949) ("Not only must due weight be accorded to the immediate context, but no part of the contract is to be disregarded"). But the acquisition of three large warehouses (the 1 and 9 East Street properties) was not convenient to the purpose of MEALP. See *Durfee* v. *Durfee & Canning, Inc.*, 323 Mass. 187, 197-199 (1948); *Haseotes* v. *Cumberland Farms, Inc.*, 284 F.3d 216, 228 (1st Cir. 2002). Nothing about the addition of three adjacent warehouses promoted the purpose of MEALP. Moreover, the defendants were not required to make convenient acquisitions; the partnership agreement merely authorized them to do so. The plaintiffs sought to transform a permissive grant of authority into a contractual requirement.

Most important, however, was the fact that the plaintiffs were urging an interpretation that placed the utmost importance on a provision of the agreement that was explicitly "*subject to* all other provisions" of the agreement (emphasis added). One of those provisions was an express understanding that the defendants could engage in "any other business or investment, including the ownership of or investment in real estate," and that "neither the partnership *nor any of the partners thereof* shall have any rights" in such businesses or investments (emphasis added).

Where the surrounding facts are not in dispute, the matter of contract interpretation presents a question of law. See *Eigerman* v. *Putnam Invs., Inc.*, 450 Mass. 281, 287 (2007); *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973). Here, the language of the partnership agreement was wholly inconsistent with the plaintiffs' position that the agreement directed the defendants to pursue large, unrelated real estate purchases on behalf of the partnership. The agreement imposed no duty on the defendants to do any such thing. As the judge found, the plaintiffs' position was untenable and incredible from the start. The judge also found that the plaintiffs offered no evidence that they believed or could have believed that the defendants were required to do anything more than they did. These facts were grounded in the evidence adduced at trial or, more accurately, the plaintiffs' inability to adduce any evidence. There was no basis to withdraw or amend these findings under G. L. c. 231, § 6G, and the single justice committed an error of law in concluding that the plaintiffs' claim had any basis in law or fact. As a matter of law,

their business opportunity claim based on the language of the partnership agreement was frivolous.

The same holds true for the single justice's conclusion that the plaintiffs' fiduciary claim was not frivolous because the law was not "well settled" when the plaintiffs brought their claim in 2002. See *Pirie* v. *First Congregational Church*, 43 Mass. App. Ct. 908, 910 n.3 (1997); *Strand* v. *Hubbard*, 27 Mass. App. Ct. 684, 687-688 (1989). By his logic, it was not clear until 2007 that "[w]hen a director's contested action falls entirely within the scope of a contract between the director and the shareholders, it is not subject to question under fiduciary duty principles" but, rather, is governed by the terms of the contract. *Chokel, supra* at 278. He stated further that the application of this principle to contracts between general partners and limited partners in a limited partnership required an *extension* of *Chokel* informed by Delaware law. See *Fronk* v. *Fowler, supra* at 507-508, citing *Sonet* v. *Timber Co. L.P.*, 722 A.2d 319, 322 (Del. Ch. 1998) ("principles of contract preempt fiduciary principles where the parties to a limited partnership have made their intentions to do so plain").

Without question, the decision of the Appeals Court in this case is the clearest statement to date in Massachusetts that the contours of fiduciary duties in a limited partnership are subject to contract. However, the proper inquiry with regard to the frivolousness of the plaintiffs' fiduciary business opportunity claim is whether the claim had a basis in law in 2002, that is, before *Chokel*.

*Chokel* did not announce a new rule of law; rather, it affirmed a long-standing rule in Massachusetts that "[w]hen a director's contested action falls entirely within the scope of a contract between the director and the shareholders, it is not subject to question under fiduciary duty principles." *Chokel, supra,* citing *Blank, supra* at 408. It relied on *Blank, supra,* which stated that fiduciary duties in a close corporation "do not arise when all the stockholders in advance enter into agreements concerning" those duties. *Id.* (dealing with fiduciary duties with respect to rights on termination and stock purchase). That holding, in turn, had origins dating even earlier. In *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 598 n.24 (1975) (*Donahue*), we said that stockholder duties to one another can be altered by

provisions in a close corporation's articles of organization, the corporate bylaws, or a stockholder agreement. Similarly, in *Evangelista* v. *Holland*, 27 Mass. App. Ct. 244, 248-249 (1989), the Appeals Court said that "[q]uestions of good faith and loyalty do not arise when all the stockholders in advance enter into an agreement" regarding those duties. It has likewise been clear for some time that the doctrine of the *Chokel*, *Blank*, *Evangelista*, and *Donahue* cases applies to limited partnerships. For example, *Blank* recalled that "a close corporation resembles a partnership." *Id.*, citing *Donahue, supra* at 587. See *JRY Corp.* v. *LeRoux*, 18 Mass. App. Ct. 153, 166 (1984).

In determining that the plaintiffs' business opportunity claim was not frivolous, the single justice pointed to the rationale used by the full panel of the Appeals Court in rejecting the plaintiffs' appeal on the merits. Unsurprisingly, that decision made use of *Chokel*, our most recent articulation of the law on the subject in question. However, the Appeals Court also cited *Blank*, signaling its awareness of the underlying doctrine. Had we never decided *Chokel*, the Appeals Court would have had ample authority to hold against the plaintiffs. With respect to the proposition that the rule in *Blank* and *Chokel* applies to limited partnerships, the Appeals Court cited a Delaware case, *Sonet* v. *Timber Co. L.P.*, *supra*. That proposition was also well founded in Massachusetts law. The law of corporations and the law of partnerships have evolved together. See *Blank, supra* at 408 (with regard to fiduciary duties, "a close corporation resembles a partnership"); *Partnership Equities, Inc.* v. *Marten*, 15 Mass. App. Ct. 42, 48 (1982) ("We have remarked . . . the affinity of purpose between the limited partnership and the business corporation. The status of a limited partner as analogous to that of a stockholder has not gone unnoted by courts and commentators. . . . It is appropriate, therefore, to look to cases involving stock subscriptions for assistance in measuring the extent of obligation of a subscriber to a limited partnership" [citations omitted]). In 2002, a claim that asserted that the unambiguous terms of a partnership agreement had no bearing on the partners' fiduciary duties had no basis in the law of Massachusetts and was frivolous.[23]

---

[23]There were two other independent reasons the plaintiffs' fiduciary business opportunity claim was frivolous.

First, the 1 and 9 East Street properties were not related to the partnership's

c. *Further consideration of the plaintiffs' case.* We turn now to the question whether the remainder of the plaintiffs' case was wholly insubstantial, frivolous, and not brought in good faith.

purpose; therefore, even apart from the other terms of the partnership agreement, there was no fiduciary duty to offer it to the partnership. *Haseotes* v. *Cumberland Farms, Inc.*, 284 F.3d 216, 228 (1st Cir. 2002), citing *Durfee* v. *Durfee & Canning, Inc.*, 323 Mass. 187 (1948). The only relationship the warehouses on the other properties bore to 23 East Street was the potential expansion of parking. However, that end was met by the defendants' decision to lease extra parking at market rates. The acquisition of three entire warehouse properties just to obtain more parking cannot be said to be related to MEALP's purpose in a fiduciary sense.

The second reason the plaintiffs' claim lacked merit was that it was not theirs to begin with. It should have been brought derivatively. General Laws c. 109, § 56, permits limited partners to bring a derivative action "in the right of a limited partnership." See *Smyth* v. *Field*, 40 Mass. App. Ct. 625, 629 (1996). In 1997, the Appeals Court stated that the derivative action right of a limited partnership is "indistinguishable from the parallel right of a stockholder to bring a derivative action." *Fusco* v. *Rocky Mountain I Invs. Ltd. Partnership*, 42 Mass. App. Ct. 441, 447 (1997), citing G. L. c. 156B, § 46. Thus, "a limited partnership is an entity in whose 'right,' and for whose benefit an action may be maintained." *Id.* It was well-settled in 2002 that a derivative action was available to the plaintiffs.

Moreover, it was clear that the plaintiffs were *required* to file a derivative claim. Partners in a limited partnership owe each other a duty of utmost good faith and loyalty, and they may sue each other individually to enforce that duty. See *JRY Corp.* v. *LeRoux*, 18 Mass. App. Ct. 153, 166 (1984); *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 580-584, 592-597 (1975) (*Donahue*). However, individual suits are not always available. When the alleged wrong committed by a partner harms the partnership rather than another partner individually, the appropriate approach is to file a derivative claim. See *Bessette* v. *Bessette*, 385 Mass. 806, 806-807, 809-810 (1982) (stockholder derivative suits).

If a business opportunity related to the purposes of a partnership belongs to anyone, it belongs to the partnership, not the individual partners. See *id.*; *Partnership Equities, Inc.* v. *Marten*, 15 Mass. App. Ct. 42, 50 (1982); *Cain* v. *Cain*, 3 Mass. App. Ct. 467, 473-474 (1975), citing *Wilson* v. *Jennings*, 344 Mass. 608, 617 (1962). The availability of suits on behalf of individual partners (or stockholders) is premised on the difficulty of proving harm to the partnership (or corporation) as a whole because only one or a handful of partners have been harmed. See *Bessette* v. *Bessette*, *supra* at 809, citing *Donahue*, *supra* at 578. That difficulty is not present when, as in this case, the general partners are alleged to have absconded with property related to the purpose of the partnership. See *Bessette* v. *Bessette*, *supra* at 809-810; *Jackson* v. *Stuhlfire*, 28 Mass. App. Ct. 924, 925 (1990), quoting J.W. Smith & H.B. Zobel, Rules Practice § 23.1.1, at 127 (1975) ("[T]he wrong underlying a derivative action is *indirect*, at least as to the shareholders. It adversely affects them merely as they are the owners of the corporate stock; only the corporation itself suffers the direct wrong . . ." [emphasis original]).

G. L. c. 231, § 6F. Although the single justice limited his discussion to the language of the partnership agreement, we treat the remaining underlying facts found by the judge as final. See *Danger Records, supra* at 12-13. From these findings we must determine if the plaintiffs' claims were frivolous and whether those claims, along with the business opportunity claim, were wholly insubstantial and brought in bad faith. We conclude that they were.

The judge found that the plaintiffs failed to offer any evidence in support of their allegations that the defendants overcharged MEALP for services or undervalued the 23 East Street property when they sold it. Indeed, they stipulated at trial that they had no evidence that many of the fees charged were unreasonable, and they joined a motion by the defendants to strike the testimony of the plaintiffs' only valuation expert after it was revealed that the expert knew his calculations were incorrect. Despite this paucity of support, the plaintiffs nevertheless pressed ahead with their claims.[24]

Given the dearth of factual or legal support and the business savvy of the plaintiffs, the judge's findings that the plaintiffs brought frivolous, insubstantial claims in bad faith are supported by the record and consistent with our case law. See *id.* at 6-7 (§ 6F standard met when there was no evidence "other than

---

[24]In deciding the defendants' motion pursuant to G. L. c. 231, § 6F, the judge wrote:

"There is simply no way to look at this case to conclude that the General Partners had the obligation to the Limited Partners to offer them, as individuals, the opportunity to invest in adjacent property. . . .

"In addition, the beginning of the case is not the only time that the plaintiffs should have evaluated their position. They lost their motion for a preliminary injunction requesting an order that the defendants pay the proceeds of the sale of the properties into court. (Again, [the presiding judge] found that the plaintiffs had *no* likelihood of success on the merits.) They lost their bid for a summary judgment. [The plaintiffs' attorney] put in his affidavit that the motion had been brought principally to test the viability of the claim of loss of business opportunity. By the close of discovery, I can conclude only that they had found nothing to support their claim that the defendants had deprived them of a business opportunity or breached any fiduciary duty. There was nothing offered at trial other than their individual subjective beliefs that they were entitled to be offered the opportunity to participate in the purchase of 1 and 9 East Street . . . ."

[the party's] own testimony" and documents designed to "conjure up" false evidence); *Hahn* v. *Planning Bd. of Stoughton*, 403 Mass. 332, 337 (1988), quoting Fed. R. Civ. P. 11 (standard met where party's theories were "irrelevant" to case and lacked "weight or importance," and where party had desire to "harass" or cause "needless increase in the cost of litigation"); *Lewis* v. *Emerson*, 391 Mass. 517, 526 (1984) (standard met when party raised "defense without even a colorable basis in law [that] represented a significant part of [party's] defense"); *Pollack* v. *Kelly*, 372 Mass. 469, 477 & n.5 (1977) (standard can be met after party's "continued use of . . . delaying tactics in the face of settled law"); *Pirie* v. *First Congregational Church*, 43 Mass. App. Ct. 908, 910-911 (1997) (standard met when plaintiff's claim "relied on a stipulation whose existence was terminated" and where plaintiff stated he would force defendant to litigate); *Katz* v. *Savitsky*, 10 Mass. App. Ct. 792, 797 (1980) (standard met when it was "clear from the papers that when the action was brought, neither the plaintiff nor his counsel had had any reason to believe" in validity of claims).

In particular, the "[a]bsence of good faith of a claimant in litigation may be inferred reasonably from circumstances . . . ." *Massachusetts Adventura Travel, Inc.* v. *Mason*, 27 Mass. App. Ct. 293, 299 (1989). See *Hahn* v. *Planning Bd. of Stoughton*, *supra*. Here, the inference of bad faith — that the plaintiffs had no reason to believe in the merits of their claims — is fully supported if not inescapable. Claims that are so unmoored from law or fact are the very definition of "frivolous": "Lacking a legal basis or legal merit; not serious; not reasonably purposeful." Black's Law Dictionary 739 (9th ed. 2009).

d. *Award.* General Laws c. 231, § 6F, requires an award of reasonable fees and cost if all or substantially all of a party's claims are found to be "wholly insubstantial, frivolous and not advanced in good faith." Ordinarily, prevailing litigants are not entitled to fees because the prospect of paying an opponent's costs "might unjustly deter those of limited resources from prosecuting or defending suits." *Police Comm'r of Boston* v. *Gows*, 429 Mass. 14, 17 (1999). Section 6F marks an exception to this rule because there is no public policy against deterring frivolous suits such as these. Where, as here, parties lack the legal or

factual basis to commence or sustain an action, yet press ahead for reasons related only to obstinance or avarice, the prospect of reimbursing their harassed opponents should cause them to rethink their litigious venture.

Having confirmed that the plaintiffs' claims were entirely insubstantial, frivolous, and brought in bad faith, an award is mandated. Because neither party has challenged the well-reasoned calculations by the judge, we reinstate them.[25]

3. *G. L. c. 211A, § 15, and Mass. R. A. P. 25.* The Appeals Court denied the defendants' motion for appellate fees and costs under G. L. c. 211A, § 15, and rule 25. It did so in part because it agreed with the decision of the single justice that the plaintiffs' business opportunity claim was not frivolous. We have determined that decision to be incorrect as a matter of law. However, an award of appellate fees is not required by § 15 or rule 25 in the same way it is required by § 6F. See *Masterpiece Kitchen & Bath, Inc.* v. *Gordon,* 425 Mass. 325, 329-330 (1997); *Avery* v. *Steele,* 414 Mass. 450, 455 (1993). Consequently, the conclusion that the plaintiffs' claims were frivolous merely triggers the discretion of the Appeals Court, and accordingly, we remand its order for further consideration.

4. *Conclusion.* The order of the single justice is reversed and the order of the judge awarding fees and costs is reinstated. The case is remanded to the Appeals Court for further consideration of its order pursuant to G. L. c. 211A, § 15, and Mass. R. A. P. 25.

*So ordered.*

---

[25]The defendants argued that, in the event we affirmed the single justice with regard to the business opportunity claim, a partial award was still required because the rest of the claims were frivolous. We need not reach that argument today.